IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RITA THAKORE and VATSAL THAKORE, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 05 C 5262 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| UNIVERSAL MACHINE CO. OF POTTSTOWN, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Rita Thakore ("Rita") and her husband Vatsal Thakore ("Vatsal") sued Universal Machine Co. of Pottstown, Inc., to recover for workplace injuries Rita suffered when a heat seal press manufactured by defendant closed unexpectedly, crushing and burning her hand. Rita asserts claims for damages based on theories of strict liability (Count I) and negligence (Count III). Vatsal asserts loss of consortium claims based on the same underlying theories of liability (Counts II and IV). Defendant has filed two motions: (1) for summary judgment on all of plaintiffs' claims, and (presumably in the alternative) to exclude any claim for damages relating to Rita's burn injury or to Vatsal's loss of sexual relations; and (2) to bar the testimony of Plaintiffs' expert Gene Olson. For the reasons discussed below, the motion for summary judgment is granted in part and denied in part, and the motion to bar plaintiffs' expert is denied.

## DISCUSSION

Motion for Summary Judgment[1]

On March 1, 2004, Rita Thakore was a production technician at CIBA Vision's ("CIBA") contact lens manufacturing facility in Des Plaines, Illinois. On that day, while operating a heat seal press manufactured by defendant, the heated upper portion of the press, called a "platen," descended unexpectedly, crushing and trapping Rita's hand. Rita quickly called for help, and several colleagues came to her rescue, but they were unable immediately to free her hand. After approximately five to six minutes, Rita's colleagues succeeded in manually forcing the press open enough to release Rita's hand. By that time, however, the heat of the press had penetrated the heat resistant glove Rita was wearing, and she suffered both fractures and burns as a result of the accident.

The function of the heat seal press was to seal a foil upper portion of contact lens packaging materials onto a plastic lower portion known as an "array," which contained contact lenses and lens solution. Because of a production glitch that occurred periodically (as often as several times a day), melted plastic from the array sometimes became stuck to the heated upper platen of the press. When this happened, the production line stopped automatically, and the melted plastic had to be removed from the upper platen before production could resume. Removal of the plastic was typically performed by production technicians such as Rita, who manually wiped the melted plastic from the upper platen with the aid of a heat-resistant glove that was kept on hand. This is what Rita was doing when the accident occurred.

---

[1]The court takes this opportunity to note that defendants' oversized briefs on summary judgment fail to include tables of contents on cases as required by LR 7.1.

The heat seal press included a "latch," the purpose of which was to hold the upper platen up any time the pneumatic pressure normally exerted during operation was released. One circumstance in which the pneumatic pressure was released was during an emergency stop, or "E-stop," a mode in which the entire line was immediately shut down. Rita had switched her production line into E-stop mode prior to attempting to clean the melted plastic from the upper platen. Post-accident investigation by CIBA revealed that when the press was repeatedly powered on and then "E-stopped," the latch system intermittently failed to hold up the upper platen.

A review of the parties' respective Rule 56.1 statements reveals at least the following disputes:[2] whether the latch on the heat press was conceived and designed as a safety device; whether the latch contained two springs or one when it left defendant's control; whether CIBA altered the heat seal press after it was installed by defendant; and whether defendant knew or should have known about the manner in which CIBA production managers cleaned melted plastic from the heat seal press.

In deciding a summary judgment motion, the court must construe the facts in the light most favorable to the plaintiff. Where the parties disagree over relevant facts, the court resolves genuine factual ambiguities in plaintiff's favor. Foley v. City of Lafayette, 359 F.3d 925, 928 (7th Cir. 2004). To prevail on their claims under a theory of strict liability, plaintiffs must prove that Rita's injuries resulted from a defect in defendant's heat seal press that existed at the time the press left defendant's control and that rendered the press unreasonably dangerous. Calles v.

[2]The court is mindful that evidence considered in opposition to a motion for summary judgment must be admissible in content, if not in form, and bases its opinion only on evidence it deems admissible. Oruta v. Central Plaza Home, 472 F.Supp.2d 951, 953 (N.D. Ill. 2006).

Scripto-Tokai Corp., 224 Ill.2d 247, 254, 864 N.E.2d., 249 (2007) (citing Suvada v. White Motor Co., 32 Ill.2d 612, 622-23, 210 N.E.2d 182 (1965)). To prevail on their claims of negligence, plaintiffs must prove that defendant owed them a duty of reasonable care in the design of the heat seal press, that it breached that duty, and that the breach caused plaintiffs' injuries, resulting in damages. Calles v. Scripto-Tokai Corp., 224 Ill.2d 247, 864 N.E.2d 249, 270 (2007).

Defendant first argues that plaintiffs' strict liability claims cannot survive summary judgment because the heat seal press was an improvement to real property and therefore beyond the reach of strict products liability. Defendant next argues that even if the heat seal press could be the basis for plaintiffs' strict liability claims, those claims cannot survive because: (1) there is no evidence to show that any defect existed at the time the press left defendant's control; (2) plaintiffs have abandoned their manufacturing defect claims; (3) there is no evidence of any defect in the emergency stop mode; (4) CIBA altered the latch intended to hold the upper platen; (5) Rita misused the press; (6) defendant had no duty to warn plaintiffs of any danger; and (7) plaintiffs' claims fail for lack of expert testimony.

As to plaintiffs' negligence claims, defendant contends that: (1) it had no duty to plaintiffs; (2) even if it had a duty, defendant satisfied that duty; (3) CIBA altered and Rita misused the product, relieving defendant from liability; and (4) plaintiffs' claims fail for lack of expert testimony.

Finally, defendant argues that plaintiffs' damages should be limited because: (1) Rita's burn injury could have been avoided regardless of the product's alleged defect, if only her colleagues had known how to use a "key" to open the press; and (2) plaintiffs have stipulated that they are not seeking damages associated to the loss of sexual relations.

The court need not address each of these arguments individually, first because they are overlapping, and second, because with a few exceptions noted below, nearly all of them are either undermined by key factual disputes or wrong as a matter of law. The following brief discussion illustrates why summary judgment is inappropriate as to most of plaintiffs' claims.

Defendant's threshold argument–that the heat seal press is outside the reach of products liability claims because it is an improvement to real property–borders on the frivolous. One of the very cases defendant cites, Witham v. Whiting Corp., 975 F.2d 1342 (7th Cir. 1992), specifically refutes the proposition defendant advances: "Illinois cases hold that a particular good can be both a product subject to the strict liability doctrine *and* an improvement to real property." Id., at 1345. (Emphasis in original.) The additional authority defendant cites, though less glaringly contrary to defendant's position, is nonetheless inapposite.

With respect to defendant's substantive arguments, the court finds that sufficient evidence exists to demonstrate a material dispute as to at least the following issues:

Whether CIBA made alterations to the latch, and whether the latch was defective when it left defendant's control. The record reflects conflicting evidence as to whether certain differences between the latch as it was observed after the accident and the latch as it was designed can be attributed to acts by defendant or by CIBA. In particular, the parties dispute whether the latch contained two springs or one when defendant installed it in CIBA's factory, and how and when the latch came to have the "grooves" that apparently helped the latch perform its intended function but that were not reflected in the product design.

Plaintiffs have offered sufficient evidence to enable a reasonable jury to conclude that CIBA did not alter the latch. For example, CIBA's maintenance manager testified that he was

unaware of any work performed on the latch, and the relevant maintenance logs reflect none. While defendant offers evidence to refute plaintiffs' evidence, only a trier of fact may properly assess the credibility and weight of the conflicting evidence on these issues.

Whether the latch was intended as a safety device. Defendant argues vigorously that the latch was neither conceived nor designed as a safety device, and that it was intended only to prevent the upper platen from descending unexpectedly and ruining the product below. Plaintiffs respond with equal vigor that the latch was intended to serve both functions. In some sense, this dispute is immaterial. There is no question that the latch was designed to hold the upper platen up. Whether the ultimate goal was to preserve the integrity of the product or to avoid injury to workers (or both) is of little consequence, because in either case, the undisputed purpose of the latch was to hold the platen up in the absence of pneumatic pressure.

Viewed in this light, a reasonable fact finder could find that after switching to E-stop mode, Rita relied on the latch to do the job it was specifically designed to do. Moreover, even if the fact finder determined that Rita misused the product, defendant would still be liable if the fact finder also determined that her misuse was reasonably foreseeable. Kerns v. Engelke, 76 Ill.2d 154, 390 N.E.2d 859, 864 (1979). Accordingly, regardless of whether defendant knew or should have known that the latch would serve a safety function, a number of factual issues must be resolved in order to determine liability.

Whether defendant had a duty to plaintiffs. This is an issue of law, and defendant is wrong on the law. The court finds that defendant's arguments disclaiming any duty to plaintiffs are meritless. In light of, (1) the hair-splitting defendant advocates between use of the latch as a personal safety device versus its use as a product safety device, when in either case, the latch

was designed to hold the upper platen up; and (2) the danger to intended users of misapprehending this subtle distinction, defendant's contention that it had no duty to warn plaintiff rings hollow.

With respect to plaintiffs' negligence claims, defendant is bound as a matter of Illinois common law to design products that are reasonably safe for their intended use and reasonably foreseeable uses. Calles v. Scripto-Tokai Corp., 224 Ill.2d 247, 270 (2007); Sanchez v. Bock Laundry Machine Co., 107 Ill.App.3d. 1024, 438 N.E.2d 569, 572 (1st Dist. 1982). Whether defendant discharged that duty, foreseeability, and proximate causation, on the other hand, are all questions of fact reserved for the fact finder. Gracyalny v. Westinghouse Electric Corp., 723 F.2d 1311, 1316 (7th Cir. 1983). It is indeed for that reason that negligence cases are rarely appropriate for summary judgment. Id.

For the reasons articulated above, the court finds that each of plaintiffs' claims survives summary judgment. Nevertheless, two of the arguments in defendant's battery have merit, and a narrowing of the issues and arguments for the fact finder is appropriate. First, the court agrees with defendant that plaintiffs have presented no evidence relating to alleged defects in the emergency stop ("E-stop") mode, other than the arguments specifically relating to the latch or latch system. Because plaintiffs did not respond to this argument in defendant's motion, they have waived it. Blakely v. Brach & Brock Confections, 181 F.Supp.2d 943, 951 (N.D.Ill. 2002).

Second, plaintiffs have effectively abandoned their manufacturing defect claims. Plaintiffs insist that this theory of liability is still alive, pointing to a statement by their expert that if the missing second spring was absent from the machine when it left defendant's control,

that would constitute a manufacturing defect. But the same expert opines that it was "unlikely" that the spring was absent prior to the accident, that in any event the product was defective even if it had two springs, and that the grooves in the latch actually increased the likelihood that the latch would perform as intended. No reasonable trier of fact could find based on this evidence that a manufacturing defect caused Rita's injury, and plaintiffs have advanced no other evidence of any manufacturing defect.

Finally, defendant's two-part request to limit plaintiffs' damages is denied. First, defendant argues that plaintiffs are not entitled to damages stemming from Rita's burn injuries because plaintiffs cannot show proximate cause with respect to those injuries. But under Illinois law, proximate causation is an issue of fact. Susnis v. Radfar, 317 Ill.App.3d 817, 739 N.E.2d 960, 967 (Ill.App.Ct. 2000), and the court declines to limit plaintiffs' potential damages at this stage. Second, defendant claims that plaintiffs have withdrawn their loss of consortium claims by stipulation, but plaintiffs state that they have waived only claims relating to "lost sexual relations." While it is unclear what, if anything, remains of plaintiffs' loss of consortium claim, the court declines to exclude it based on the parties' stated positions.

For the foregoing reasons, defendant's motion for summary judgment is granted in part and denied in part. Plaintiffs' manufacturing defect claims and claims alleging defects in the emergency stop mode generally (as opposed to defects in the latch system specifically) are dismissed. Defendant's motion is otherwise denied.

Motion to Bar Plaintiffs' Expert

Having considered the parties' respective arguments, the court finds that based on his education and experience, Gene Olson is qualified to offer expert testimony relating to the alleged design defect, and that such testimony meets the requirements of Fed.R. Evid. 702. Defendant's motion to preclude his testimony is therefore denied. Further, defendants do not dispute that the calculations and "free body diagram" Olson used to critique the design of the latch, or his discussion of why the latch was insufficient from an engineering standpoint, reflect generally accepted scientific principles. Defendant may challenge any perceived flaws in the conclusions Olson draws from that critique, as well as other flaws in his opinions, by cross-examination.

Nevertheless, Mr. Olson's report includes opinions that exceed conclusions that can reasonably be drawn based on accepted scientific principles and Mr. Olson's experience as a professional engineer, and that require inference based on the factual record, including the testimony of other witnesses. Such conclusions must be left to the fact finder. Accordingly, Mr. Olson may offer his opinions regarding the alleged design defect, and he may also opine, based on his professional experience, on whether defendant's analysis and testing of the latch design was adequate. Mr. Olson may not, however, testify regarding his purported opinions on whether any defect was present when it left defendant's control; whether Rita was at fault; or whether Rita reasonably relied on the latch to hold the upper platen in place.

## **CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment is granted only as to plaintiffs' manufacturing defect claims and claims alleging defects in the emergency stop mode generally. Defendant's summary judgment motion is otherwise denied. Defendant's

motion to bar plaintiffs' expert is denied. Plaintiffs' expert may testify subject to the limitations set forth above. This matter is set for a report on status September 9, 2008, at 9:00 a.m.

**ENTER: August 28, 2008**

**Robert W. Gettleman**
**United States District Judge**