**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RITA THAKORE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 05 C 5262 |
| | ) | |
| v. | ) | Judge Gettleman |
| | ) | |
| UNIVERSAL MACHINE CO. OF | ) | Magistrate Judge Cole |
| POTTSTOWN, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION ON MOTIONS IN LIMINE**

The Plaintiff was injured in March 2004 when a press manufactured by the Defendant came down on her hand, while she was cleaning it. The Plaintiff contends that the machine was improperly designed and manufactured and the Defendant is strictly liable in tort for having caused the Plaintiff's injury. The Defendant contends the injuries were caused by the Plaintiff's own negligence and the flawed procedures of her employer, CIBA Vision. The case is here for ruling on the parties' post-trial motions pursuant to Judge Gettleman's referral, 28 U.S.C. §636(b)(1)(A) and to finalize the jury instructions about which the parties have significant disagreements.

**A.**
**Plaintiff's Motions**

  **Motion 1 [#150] – To Bar Any Reference to Two Employee Warnings Issued by CIBA Vision to Rita Thakore Three Years After the Date of the Accident.**

  **Motion 2 [#151] – To Bar Any Reference to Rita Thakore's History of Thyroid Cancer.**

  **Motion 3 [#152] – To Bar Any Reference to Collateral Source Benefits Received by Rita Thakore, Including But Not Limited to Her Workers' Compensation Claim.**

The Defendant has not responded to motions 1, 2 and 3. Hence, they are granted. *MCI WorldCom Network Services, Inc. v. Atlas Excavating, Inc.*, 2006 WL 3542332 at *3 (N.D.Ill.

2006)(Moran, J.)("The general rule in the Seventh Circuit is that a party's failure to respond to an opposing party's argument implies concession."). In addition, the evidence is irrelevant under Rule 401, Federal Rules of Evidence, and thus inadmissible. *See* Rule 402.

**Motion 4 [#153] – To Bar Any Reference to Subsequent Remedial Measures Taken by CIBA Vision Corporation at its Des Plaines, Illinois Plant**.

The motion seeks to prohibit the defense from introducing any evidence, argument or reference to what the motion calls "subsequent remedial measures taken by CIBA Vision Corporation following the occurrence in which [the plaintiff] was injured on March 1, 2004, including implementation of a Lock Out/Tag Out policy, introduction of the platen cleaning tool, and the use of a blocking arrangement in the machinery by CIBA Vision."[1] This evidence is claimed to be relevant to the defendant's theory that the plaintiff was negligent, and that CIBA Vision was also negligent "for not implementing these measures before the plaintiff was injured." (*Memorandum* at 3). The motion is based on Rules 407 and 403, Federal Rules of Evidence.

### 1.

Rule 407 prohibits the introduction of evidence that, following an injury, steps were taken that would have made the injury or harm less likely to have occurred. The prohibition, however, extends only to evidence of remedial measures taken *by the defendant* after the plaintiff was injured *and* offered to prove the defendant was at fault – that is, that it was negligent or responsible for a defect in a product or in its design or an inadequate warning or instruction. The Rule expressly allows evidence of subsequent measures, even by a defendant when offered for another relevant

---

[1] This motion does not involve evidence of a change made by CIBA Vision to the design of the latch. The plaintiff wants that evidence admitted against the defendant. The defendant has moved to exclude it. The design change was not made to the particular machine that injured Ms. Thakore until after her injury. And so there is no claim by the defendant that it caused the injury.

purpose such as to prove ownership, control, or feasibility of precautionary measures, if controverted, or for impeachment.[2]

The twofold purpose of the Rule is made clear in the Advisory Committee Notes to Rule 407. The first objective is to avoid unfairly prejudicing the defendant. It was thought that jurors would too readily construe subsequent remediation by the defendant as an admission of a prior defective design or condition. Such evidence also distracts the jury from the relevant time frame for its inquiry, *i.e.*, whether the product was defective at the time of manufacture and sale. *See Raymond v. Raymond Corp.*, 938 F.2d 1518, 1522 -1523 (1st Cir. 1991). Indeed, the plaintiff's motion, itself, in arguing for exclusion of evidence of the operating procedures, which were apparently designed to ensure greater safety, stresses that "the issue for the jury is whether Universal should be liable for the plaintiff's injuries based on its conduct at and before the time it manufactured the heat seal press that fell on her hand. If the machine was unreasonably dangerous when it left Universal's control, Universal should be held liable regardless of whether additional safeguards could have been taken by a user of the machine." (*Motion* at 4).[3]

For the plaintiff, it is quite beside the point that under Rule 407 the subsequent remediation was undertaken by a non-party to the suit, since CIBA was a "potential" third-party defendant and thus falls within Rule 407's exclusion of *post-hoc* remediation by a defendant. *Mehojah v.*

---

[2] The design of Rule 407 is much like that of Rule 404(b), which excludes evidence of other crimes, wrongs or acts when offered to prove the character of a person if offered to show action in conformity therewith, but which permits the evidence to be admitted "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident...." The list of permissible uses in Rule 407, like that in Rule 404(b), is illustrative and not exhaustive. *Compare* Rule 105 ("When evidence which is admissible... for one purpose but not admissible... for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.").

[3] In opposing the defendant's motion to exclude evidence of CIBA Vision's design change to a supposed "safety latch" on the press, the plaintiff abandons this focus.

*Drummond*, 56 F.3d 1213, 1215 (10th Cir. 1995) is one of a number of cases that has rejected this sort of argument.

The argument for admissibility is said to be based on the "plain language" of Rule 407, which the plaintiff says makes no distinction between measures taken by parties and non-parties. That theory has been championed by Professor Saltzburg, who has criticized the cases that have uniformly concluded that the Rule only excludes evidence of subsequent remediation offered to prove fault when the measures were taken by the defendant. Perhaps recognizing that it sometimes is "'pernicious oversimplification to say that because the words of a statute are plain, its meaning is also plain,'" *F.B.I. v. Abramson*, 456 U.S. 615, 625 (1982), eight federal Courts of Appeals have concluded that the policy behind the implementation of Rule 407 is not implicated where the evidence concerns remedial measures taken by an individual or entity that is not a party to the lawsuit and have concluded that Rule 407 is not a bar to admissibility of evidence of subsequent repairs by non-parties like CIBA Vision. *See Millennium Partners L.P. v. Colmar Storage, LLC,* 494 F.3d 1293, 1303 (11th Cir. 2007); *Diehl v. Blaw-Knox*, 360 F.3d 426 (3rd Cir. 2004); *Mehojah v. Drummond*, 56 F.3d 1213, 1215 (10th Cir. 1995); *TLT-Babcock, Inc. v. Emerson Elec. Co.*, 33 F.3d 397, 400 (4th Cir. 1994); *Raymond v. Raymond Corp.*, 938 F.2d 1518, 1523-24 (1st Cir. 1991); *Pau v. Yosemite Park & Curry Co.*, 928 F.2d 880, 888 (9th Cir. 1991); *O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1204 (8th Cir. 1990); *Dixon v. International Harvester*, 754 F.2d 573 (5th Cir. 1985); *Grenada Steel Industries, Inc. v. Alabama Oxygen Co., Inc.*, 695 F.2d 883 (5th Cir. 1983); *Lolie v. Ohio Brass Co.*, 502 F.2d 741, 744 (7th Cir. 1974)(The social policy behind Rule 407 "clearly has no applicability when the evidence is offered against a party, such as this defendant, which did not make the changes.").

The plaintiff, however, seems to contend that I am at liberty to ignore these cases, including those of the Seventh Circuit, and that I am required to abide by what it deems the plain language of Rule 407. As it pertains to cases from other jurisdictions, the argument is theoretically right, but ignores the realities of decision-making. As it applies to the Seventh Circuit, the argument is mistaken. *See United States v. Watson*, 87 F.3d 927, 930 n.2 (7th Cir. 1996); *Lindh v. Murphy*, 96 F.3d 856, 873 (7th Cir. 1996)(*en banc*); *Gacy v. Welborn*, 994 F.2d 305, 311 (7th Cir. 1993)(Easterbrook, J.). *See also* Frankfurter, John Marshall and the Judicial Function, In Government Under Law, 31 (1968) ( "Self-willed judges are the least defensible offenders against government under law....").

Perhaps the Seventh Circuit and its sister circuits have all misread Congress's intent, as the plaintiff contends. That has certainly happened more than once in our history. *See e.g., McNally v. United States*, 483 U.S. 350 (1987). But ours is a hierarchical judiciary, and judges of inferior courts are bound to follow the decisions of their superiors. *See Lindh v. Murphy*, 96 F.3d 856, 873 (7th Cir. 1996)(en banc); *Gacy v. Welborn*, 994 F.2d 305, 311 (1993); *Bingham v. New Berlin School Dist.*, 550 F.3d 601, 605 (7th Cir.2008);*United States v. Watson*, 87 F.3d 927, 930 n.2 (7th Cir. 1996).

But because Rule 407 does not bar evidence of CIBA Vision's changes to its policies does not mean that the evidence is automatically admissible. Like all evidence, it must still be relevant, Rule 401, and must pass muster under Rule 403. *Tome v. United States*, 513 U.S. 150 (1995) recognized that the Federal Rules of Evidence's treatment of relevancy is liberal, and the Seventh Circuit has stressed that the relevancy requirement is a "minimal" one. *United States v. Murzyn*, 631 F.2d 525, 529 (7th Cir. 1980). Thus, the question is not whether there is great probative weight, but

whether there is any. *United States v. Marks*, 816 F.2d 1207, 1211 (7th Cir. 1987). *United States v. Pollard*, 790 F.2d 1309, 1312 (7th Cir. 1986) put it this way:

> [T]he definition of relevancy adopted in Rule 401 is an expansive one, and for evidence to be relevant under this definition, it 'need not conclusively prove the ultimate fact in issue, but only have 'any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence' New Jersey v. T.L.O., 469 U.S. 325, Even if the proposition for which it is offered still seems improbable after the evidence is considered, the proffered evidence is not necessarily irrelevant. McCormick at 543. As Dean McCormick has aptly phrased it, to be relevant evidence need only be a brick, not a wall.

It is for these reasons that Rule 407's exclusionary rule, standing alone, is deemed insufficient to justify exclusion of evidence of subsequent remediation, for the inference of fault from subsequent repairs – in whatever form – although perhaps weak, is a permissible one. *See* Steven A. Saltzburg, Michael M. Martin, and Daniel J. Capra, 2 Federal Rules of Evidence Manual, §407.02[3] (9th ed.).[4]

It is the plaintiff's position that evidence of CIBA's post-accident remediation – in the form of safety measures that apparently provided a greater degree of protection to workers operating the heat seal press – is irrelevant to the question of whether the press was unreasonably dangerous or negligently designed. (*Memorandum* at 11). This position is said to be supported by Professors Saltzburg, Martin and Capra's treatise on the Federal Rules of Evidence, some 34 pages of which have been attached as an exhibit to the motion. The treatise contends that "subsequent remedial measures are of marginal relevance in assessing the defendant's liability, and that this marginal relevance is almost always substantially outweighed by the risk of jury confusion created by the

---

[4] Wigmore thought the inference of negligence from post accident repairs exceedingly weak, II Wigmore, Evidence, Sec. 283 (3d Ed. 1940), for it would hold, in the oft-quoted quip of Baron Bramwell, "that, because the world gets wiser as it gets older, therefore it was foolish before.' *Hart v. Railway*, 21 Law T. (N.S.) 261, 263.'" *Columbia & P.S.R. Co. v. Hawthorne*, 144 U.S. 202, 208 (1892).

introduction of a subsequent remedial measure. The balance so often favors exclusion that it probably makes sense to impose a generalized rule of exclusion rather than to rely initially on a case-by-case approach under Rule 403." *Id.* at 407.

It is the plaintiff's contention that if the evidence is admitted it will unfairly prejudice her because the jury may be lead to believe that CIBA's actions were an admission of fault on its part, thereby impermissibly exonerating the defendant. The defendant's two and a quarter-page response cites no cases and argues only that Rule 407 has no applicability since the evidence sought to be barred cannot be classified as "subsequent remedial measures," but "rather were items that CIBA had in place prior to the accident and therefore do not fall within the purview of Rule 407." (*Defendant's Response* at 1). If the actions were taken prior to the accident – and even if Rule 407 applied to non-parties – the evidence would not be excluded under Rule 407 because Rule 407 deals only with subsequent remediation. *See Stanley v. Aeroquip Corp* (1999 U.S. App. LEXIS 8034)(6th Cir. 1999) ("Federal Rules of Evidence 407 does not apply to this situation because the change. . . did not occur 'after an injury or harm allegedly caused by an event' it happened pre-accident, post-manufacture."); *In re Air Crash Disaster*, 86 F.3d 498 (6th Cir. 1996)(Here "the evidence was of measures taken after the design of a product but before the accident. Inasmuch as the exhibits related to pre-accident changes to the flight director, they fell outside the reach of Rule 407.").

The defendant's response to the motion offers no rejoinder to the plaintiff's Rule 403 argument. The ultimate question for the jury is what caused the injury to Ms. Thakore. Was it an unreasonably dangerous condition of Universal's machine and/or its negligent design or was it Ms. Thakore's own contributory negligence or was it CIBA Vision's faulty procedures? Or perhaps it was some combination of all three. It will be for the jury to sort this out under proper instructions.

But to do so it must know the factual setting in which the accident occurred. That will require that it hear evidence about CIBA Vision's procedures that antedated the accident. Not only are such procedures outside the scope of Rule 407 – even if non-parties' conduct was within the scope of the Rule – but they are relevant if the jury is to make an informed decision.

To the extent that CIBA Vision changed its procedures following the accident – as the plaintiff contends – the post-accident changes are relevant under the expansive definition of relevancy in Rule 401. The Seventh Circuit has held in *Lolie v. Ohio Brass*, 502 F.2d 741 (7th Cir. 1974) – Justice (then Judge) Stevens was on the unanimous panel – that a plaintiff may use evidence of his employer's subsequent remedial measures to prove a claimed defect in the defendant's product based on strict liability and negligent design theories. The facts were these: Plaintiff's husband, a coal miner, was fatally injured when a power cable fell from the roof of a mine. Defendant was a manufacturer of metal clips which were intended to hold the cable in place; they were dislodged, however, after being struck by a cable which fell after it was struck by a steel beam which dropped while being unloaded by the mine operator.

Since the clips did not prevent the cable from falling, plaintiffs claimed that their design was defective and unreasonably dangerous and defendant was strictly liable in tort. (These are Ms. Thakore's theories of recovery). Subsequent to the accident, a state mine inspector directed the mine operator to provide added support to the power cable. Plaintiff sought to introduce evidence of this post-occurrence change, but the district court excluded it. The jury concluded that the accident was

entirely the result of the mine operator's negligence when unloading the steel rail. The principal

contention on appeal was that the exclusion constituted reversible error. 502 F.2d at 743.[5]

The Court of Appeals concluded that evidence of the post-occurrence change by the mine

operator – the decedent's employer – was relevant to "satisfy plaintiff's burden on any" of the issues

of whether the product as designed was incapable of preventing the complained of injury; the

existence of an alternative design which would have prevented the injury; and the feasibility of that

design. *Id.* at 744. However, since the evidence of the accident, itself, established that the design

of the defendant's clips could not prevent the power cable from falling under the circumstances that

occurred at the mine, and since the plaintiff's expert also testified to this fact, the court concluded

that the evidence of post-occurrence change was cumulative and thus the district court's evidentiary

error was harmless. *Id.*

*Lolie* answers the plaintiff's argument that subsequent remedial measures taken by CIBA

Vision might be taken by the jury "as an admission of fault on [CIBA Vision's] part." If evidence

of an employer's post-accident changes is relevant to show that a defendant's product may have been

---

[5] The plaintiff's motion's unsupported contention that the court's holding is *dicta* is mistaken. In *United States v. Crawley*, 837 F.2d 291, 292 (7th Cir.1988), Judge Posner explained that "instead of asking what the word 'dictum' means we ask what reasons there are against a court's giving weight to a passage found in a previous opinion." The chief reason for disregarding dictum is that being unnecessary to the outcome of the earlier case it was perhaps not as fully considered as it would have been if it were essential to the outcome. *Id.* The court's extended discussion of the "principle contention" in *Lolie* is the antithesis of *dictum*. In *Barapind v. Enomoto*, 400 F.3d 744, 746-48 (9th Cir. 2005)(en banc), the court of appeals scolded the lower court for declining to follow what it believed was a circuit dictum that it believed was wrong: "The [lower court] operated under a mistaken understanding of what constitutes circuit law.... [O]ur articulation in [*Quinn v. Robinson*] ... became law of the circuit, regardless of whether it was in some technical sense 'necessary' to our disposition of the case. The [lower Court was] ... required to follow [it]." *See generally* Pierre N. Leval, *Judging Under The Constitution: Dicta About Dicta*, 81 N.Y.U.L.Rev 1249, 1253 (2006).

unsafe or negligently designed, an employer's post-accident change of its own procedures is relevant to show that the accident may have been caused in whole or in part by the employer's faulty procedures. Of course that evidence is prejudicial; all relevant evidence is. Why else use it? *Espeaignnette v. Gene Tierney Co.*, 43 F.3d 1, 7 (1st Cir. 1994); *United States v. Medina*, 755 F.2d 1269, 1274 (7th Cir. 1985). But only evidence that is *unfairly* prejudicial is subject to exclusion under Rule 403. *United States v. Duran*, 407 F.3d 828, 835 (7th Cir. 2005). Whatever prejudice might exist in connection with post-accident changes in CIBA Vision's procedures, it cannot be said that it is "unfair" and that it "substantially outweighs" the probative significance of the evidence.

Moreover, it is not as though the jury will only hear that there were changes by CIBA Vision to its procedures. There will be evidence that will explain the reason for the changes, and of course, that the post-accident changes were in response to the accident. Thus they will not be left to speculate as to the reasons for the changes. *See Diehl*, 360 F.3d at 432. There will be ample opportunity for the plaintiff to cross-examine the witnesses, to put on affirmative proof of its own, and to be able to argue that whatever changes CIBA Vision made in its procedures were not the cause of the harm to Ms. Thakore. And finally, Judge Gettleman will no doubt appropriately instruct the jury as to the proper and limited role for which the evidence is being received.

**Motion 5 [#155] – To Bar the Defense from Introducing Any Evidence of Argument Suggesting that CIBA Vision Designed the Heat Seal Press Manufactured by Universal Machine**.

Plaintiff seeks to bar evidence suggesting that CIBA Vision designed the heat seal press. The motion is denied. This is an issue of fact that will depend upon assessment of all the evidence adduced at trial and thus cannot be decided by a motion in limine, which is not the occasion for a mini trial; its function is to decide only those issues that are clearly inadmissible for any purpose.

*See Robenhorst v. Dematic Corp.*, 2008 WL 1821519 (N.D.Ill. 2008); *Plair v. E.J. Brach & Sons, Inc.*, 864 F. Supp. 67, 69 (N.D. Ill. 1994). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice versus probativeness can be resolved in the informed setting only a trial can provide. *See Hawthorne Partners v. AT&T Technologies, Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). *See also United States. v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989). Rulings on motions in limine are inevitably preliminary and subject to revision as the evidence comes in at trial. "Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling." *Luce v. United States*, 469 U.S. 38, 41 (1984).

**B.**

## DEFENDANT'S "GENERAL MOTIONS" [Collectively #159]

**Motion 1** – **To bar mention that the defendant, its attorneys or agents have ever delayed the trial of this cause.**

There being no objection to the motion, it is granted.

**Motion 2** – **To bar any mention of the condition of the plaintiff's injury other than degree, location and frequency of pain, unless that testimony regarding injury, treatment, or diagnosis is given by a licensed and qualified medical doctor.**

The motion is granted in part and denied in part. Statements made by a medical provider to a witness are inadmissable hearsay if offered by the witness to prove the truth of the matters asserted. *See, e.g., Bombard v. Fort Wayne Newspapers*, 92 F.3d 560 (7th Cir. 1996); *Field v. Trigg County Hosp., Inc.*, 386 F.3d 729 (6th Cir. 2004). Of course, plaintiff may testify about her own pain and suffering, and so too may other testimonially competent witnesses. (Rule 602, Federal Rules of

11

Evidence).  And statements by the witnesses about relevant statements made by the plaintiff that satisfy the requirements of Rule 803(3) or 803(4) will be admissible under those hearsay exceptions.

**Motion 3** — **To prevent any comment, suggestion or reference in any manner, as to the existence of non-existence of any insurance covering Defendant for this case.**

The Plaintiff does not object to the motion and therefore it is granted.

**Motion 4** — **To bar any unpaid medical bills until it has been affirmatively established through competent medical testimony that the bills are fair and reasonable.**

The defendant has withdrawn the motion based on the representation that there are no unpaid medical bills.

**Motion 5** — **To bar any comment or reference to any settlement negotiations including any offers of settlements, settlement demands, offers of compromise, the amounts of such offers and demands and any rejections of such offers.**

The Plaintiff does not object to the motion and it is therefore granted.

**Motion 6**—**Barring from the courtroom during the introduction of evidence and testimony those whom Plaintiff intends or expects to call as a witness.**

To the extent that the motion relates to potential, non-party witnesses, the motion is granted.  The parties have agreed that each may have an expert at counsel table during the trial.  As to these witnesses, the motion is denied as moot.  *See United States v. Seschillie*, 310 F.3d 1208 (9th Cir. 2002); Rule 615(3).

**Motion 7** — **Barring any comment, argument or mention that the plaintiff's future is on the line or at stake or is otherwise held in the balance as a result of this lawsuit or as a result of any adverse verdict that may be rendered by the jury.**

The Plaintiff does not object to the motion, and it is therefore granted.

**Motion 8** — **Barring any testimony with regard to the wealth or poverty or general financial condition at any time of the plaintiff or the defendant should be precluded.**

The Plaintiff does not object to the motion, and it is therefore granted.

**Motion 9**— **Barring any argument by the Plaintiff that the trier of fact should put themselves in the place of the Plaintiff.**

The Plaintiff does not object to the motion, and it is therefore granted.

**Motion 10**— **Barring any reference or comparison to the amount of previous awards or settlements**.

The Plaintiff does not object to the motion, and it is therefore granted.

**Motion 11**— **Barring any evidence of loss of consortium by the plaintiff**.

The Plaintiff does not object to the motion, and it is therefore granted.

**Motion 12**— **Barring "new opinions" by Plaintiff's expert, Gambo, based on tax returns turned over for the first time within the last week.**

The defendant has withdrawn this motion.

**Motion 13**— **Barring "any evidence" to the e-stop or a relating [sic]  manufacturing defect, which were decided through summary judgment, offered by plaintiff...."**

While the motion cited Rules 402 and 403, it offered no explanation of how the Rules relate to its contention and no cases are cited in support of the motion.   The plaintiff argues that the summary judgment order speaks for itself, but cites no case, and offers no explanation for its conclusion.  The argument is thus waived.  The Seventh Circuit has repeatedly stressed that it is not the obligation of the court to research and construct the legal arguments available to parties, and that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues). *See e.g. White Eagle Co-op Ass'n v. Conner*, 553 F.3d 467, 476 n. 6 (7th Cir. 2009); *Fabriko Acquisition Corporation v. Prokos*, 536 F.3d 605, 609 (7th Cir. 2008); *United States v. Alden*, 527 F.3d 653, 664 (7th Cir. 2008); *IFC Credit Corp v. Aliano*

*Brothers General Contractors, Inc.*, 437 F.3d 606, 610-611 (7th Cir. 2006); *United States ex rel. Feingold v. AdminaStar Federal, Inc.*, 324 F.3d 492, 494 (7th Cir. 2003); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir.1991).

In any event, the argument is erroneous. The fact that an issue or claim may have been decided through summary judgment does not necessarily determine the admissibility at trial of the evidence that was related to that issue. Of course, the evidence cannot be used to support the claim on which judgment has been entered, but if the evidence is also relevant to a claim or issue that remains in the case, the evidence is admissible for that limited purpose. *See Geldon v. South Milwaukee School District,* 414 F.3d 817 (7th Cir. 2005); *Maher v. City of Chicago*, 406 F.Supp.2d 1006 (N.D. Ill. 2006). It will be for the plaintiff to persuade Judge Gettleman that the evidence is relevant under Rule 401. The motion is denied.

**Motion 14— "Mr. Olson should be reminded that, pursuant to Court Order, he may not testify regarding his purported opinions on whether any defect was present when it left defendant's control; whether Rita was at fault; or whether Rita reasonably relied on the latch to hold the upper platen in place."**

The motion is denied. It is the job of counsel to ensure that witnesses are properly prepared so that they will not to volunteer information and to ask carefully framed questions responsive answers to which will not yield otherwise inadmissible evidence or exceed the limits imposed on that testimony by prior rulings.

**Motion 15— "That plaintiff's burden to prove its claims by a preponderance of the evidence not be likened or analogized to a 'tipping' of the 'scales of justice,' or that the evidence in favor of the plaintiffs need only be 'slightly' more than the evidence favoring the defendant."**

The motion is denied. None of the cases cited by defendant dealt with instructions or argument by counsel during trial. Instead, they dealt with defining preponderance of the evidence during *voir*

*dire*. Illinois cases cited by Defendant do not govern evidentiary or procedural cases in the federal courts. Moreover, there is ample authority permitting the very argument sought to be prohibited. *See Blossom v. SCX Transp. Inc.*, 13 F.3d 1477 (11th Cir. 1994)("[C]ounsel's "tipping the scales" language was a proper illustration of Blossom's burden of proof. Courts have specifically endorsed this language for use in civil jury instructions."); *Ostrowski v. Atlantic Mut. Ins. Companies*, 968 F.2d 171, 187 (2d Cir.1992)(remanding and recommending that the district court use the scale-tipping analogy).

**Motion 16—** **"This Court should order that any CIBA personnel called to testify in this case be clearly and specially advised ahead of time not to state, volunteer, or in any other way offer testimony of an opinion nature before the jury in this case."**

The motion is denied. It is Defendant's position that CIBA personnel were not disclosed as experts as required by Federal Rules of Civil Procedure 26(a)(2) and did not provide expert reports. However, CIBA personnel were not retained or specially employed in preparation for litigation and so were not required to produce a report. *See Musser v. Gentiva Health Services*, 356 F.3d 751 (7th Cir. 2004)("Only those witnesses 'retained or specially employed to provide expert testimony' must submit an expert report complying with Rule 26(a)(2)(B). The commentary to Rule 26 supports the textual distinction between retained experts and witnesses providing expert testimony because of their involvement in the facts of the case: a 'treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report.'"); *Eagle Services Corp. v. H2O Industrial Services*, Inc., 2005 WL 5988646 (N.D.Ind. 2005)(an expert report is not required when witness was hired for a limited time, many years prior to the litigation, for a specific on-going business purpose.); *McCloughan v. City of Springfield*, 208 F.R.D. 236 (C.D.Ill. 2002)(witness did not need "to submit an expert report if planned testimony was acquired, 'not in preparation for trial,

but rather because he was an actor or viewer with respect to transactions or occurrences that are a part of the subject matter of the lawsuit.'").

**Motion 17**— **"Testimony of witnesses regarding whether they find the party to be credible is improper opinion testimony."**

The plaintiff does not object to the motion, and it is therefore granted.

**Motion 18**— **"Bar that the plaintiff will undergo future wage loss as a result of the need for future surgery."**

The two sentence motion seeks to bar evidence that plaintiff will undergo future wage loss. Defendant has not provided any facts or argument to suggest how any evidence of damages that will be introduced at trial will be speculative, remote, or based upon mere possibility. Indeed it has not pointed to any specific evidence at all. The argument is thus forfeited. *See Trustees of Chicago Painters and Decorators Pension, Health and Welfare, and Deferred Sav. Plan Trust Funds v. Royal Intern. Drywall and Decorating, Inc.*, 493 F.3d 782, 789 (7th Cir. 2007); *Bretford Mfg., Inc. v. Smith System Mfg. Corp.*, 419 F.3d 576, 581 (7th Cir.2005); *Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005); *R.J. Reynolds Tobacco Co. v. Cigarettes Cheaper*, 462 F.3d 690 (7th Cir.2006); *G. Heileman Brewing Co., Inc. v. Joseph Oat Corp.*, 848 F.2d 1415, 1418 (7th Cir. 1988);*United States v. Cusimano*, 148 F.3d 824, 828 n.2 (7th Cir. 1998). "'[I]t is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel.'" *United States. v. McLee*, 436 F.3d 751, 760 (7th Cir. 2006). *Accord APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 631 (7th Cir. 2002); *Spath v. Hayes Wheels Int'l-Indiana, Inc.*, 211 F.3d 392, 397 (7th Cir.2000).

Plaintiff must be given the opportunity at trial to provide the necessary foundation for evidence of damages. Of course the defendant may make appropriate objections to any evidence that

under the Rules of Evidence would permit impermissible speculation by the jury, for neither hypothesis nor speculation is a substitute for proof of damages–or anything else. *See, Bucklew v. Hawkins, Ash, Baptie & Co., LLP.* 329 F.3d 923, 933 (7th Cir. 2003); *In re Cohen,* 507 F.3d 610, 614 (7th Cir. 2007); *Lauth v. McCollum,* 424 F.3d 631, 634 ( 7th Cir. 2005); *United States v. Landry,* 257 F.2d 425, 431 (7th Cir. 1958).

**Motion 19— "Plaintiff must be barred from introducing evidence of medical bills."** This motion has been withdrawn.

**Motion 20— "Olson should be barred from testimony that uses demonstratives or employs forms of reenactment."**

The motion is premature, undeveloped, and non-specific, and as broadly stated, incorrect. The events described in the motion may never come to pass and so whatever objections that may arise regarding Mr. Olson's testimony may be made at trial in an informed setting. And the use of otherwise permissible demonstrative aids can be of invaluable assistance to the jury. The motion is denied.

**Motion 25— "It is improper for plaintiff's counsel or Plaintiff's economic expert to speculate on future economic possibilities such as the state of the economy in which even plaintiff might lose her job because she is allegedly partially incapacitated by her injuries."** [6]

Defendant devotes one sentence to urging the court to bar Plaintiff's counsel or economic expert from speculating on future economic possibilities. Of course, speculation is never a substitute for proof. *See In re Cohen,* 507 F.3d 610, 614 (7th Cir. 2007); *Lauth v. McCollum,* 424 F.3d 631, 634 (7th Cir. 2005); *United States v. Landry,* 257 F.2d 425, 431 (7th Cir. 1958). But that principle does not decide the motion, which offers no specificity as to what future economic possibilities it

---

[6] While this motion is the 21st "general motion," it was marked in the compilation of motions provided to the court as number 25. However, there are no motions 22-24.

has reference to. *Okraynets v. Metropolitan Transp. Authority*, 555 F.Supp.2d 420 (S.D.N.Y. 2008), which is cited by Defendant, holds that "it is not necessary -- nor is it possible -- to establish future economic damages with mathematical certainty . . . only that the loss or damage be capable of ascertainment with reasonable certainty." But that undeniable general proposition does not control the disposition of the motion. At this time, it has not been established whether the future economic damages about which the plaintiff may offer evidence are speculative or not. This is a determination that can only be made at trial. The motion is denied.

## C.

**Defendant's Motions - Not Captioned As "General Motions" And Unnumbered**

**Motion 10 [#156] — "To Bar Overly Prejudicial Gruesome Photographs."**

The motion, whose title begs the question to be decided, contends that there is little probative value to the pictures of the plaintiff's injuries because they will duplicate what the plaintiff and her treating physician will testify to at trial. The contention ignores the undeniable axiom of experience that "a picture is worth a thousand words." No matter how articulate a witness may be, the true dimensions of a serious injury are not reducible to words. Only a picture can convey the extent and severity of the injury and thus the legitimacy of the plaintiff's claimed physical suffering and mental anguish. It is for that reason that courts – at least in the federal system – uniformly admit pictures that display, often in a graphic way, the consequences of accidents. Indeed, where the accident is serious, the need for the trier of fact to have before it the most explanatory evidence is obviously more important than where the accident is insignificant. Contrary to the implicit argument made by the defendant, the probative value of photographs of injuries is not automatically "substantially outweighed" by the danger of "unfair" prejudice. Rule 403.

18

The majority of cases cited by defendant are not controlling since this case will be tried under the Federal Rules of Evidence. *See Stutzman v. CRST, Inc.,* 997 F.2d 291 (7th Cir. 1993)("We have held that the Federal Rules of Evidence generally apply in federal diversity actions."); *In re Air Crash Disaster Near Chicago, Ill. On May 25, 1979,* 701 F.2d 1189 (7th Cir. 1983).

This is not to say that the plaintiff has an unlimited right to introduce as many photographs as she chooses or that there are no limits on admissibility other than relevancy. Quite the contrary. But it is within the district court's quite broad discretion under Rule 403, to determine when enough is enough. *See, e.g., Dixon v. International Harvester Co.,* 754 F.2d 573 (5th Cir. 1985)(The court excluded some pictures of victim's injuries, but admitted two which revealed victim's abdominal area in its repaired condition. The court said "[a]lthough the photographs certainly were prejudicial, they also were relevant to demonstrate the nature of Dixon's injuries . . . The district court did not abuse its sound discretion in admitting only these two photographs."); *Dabney v. Montgomery Ward & Co.,* 761 F.2d 494 (8th Cir. 1985)(In a products liability action seeking damages for injuries sustained in a fire allegedly caused by a furnace manufactured by defendant, district court did not abuse its discretion in admitting photographs depicting nature and extent of burns to plaintiff's body where nature and extent of the physical injuries was an issue in the case.); *Bellinger v. Deere & Co.,* 881 F.Supp. 813 (N.D.N.Y. 1995)(Court allowed photographs of plaintiff's injured hand taken prior to and in the course of reconstructive procedures); *Haas v. Abrahamson,* 705 F.Supp. 1370 (E.D. Wis. 1989)(supporting the proposition that so-called 'gruesome' photos are admissible in order to 'aid the jury in securing a clear idea of a material situation when the photographs better show that situation than does the testimony of witnesses'").

The photographs are also appropriate in view of the defendant's denial in materials submitted in the pretrial order denying that plaintiff was injured and damaged to the extent claimed. The pictures are essential to meet the force of this argument. In my judgment, the probative value of the photographs is not *substantially* outweighed by the danger of *unfair* prejudice. Rule 403. It will be for Judge Gettleman to decide which and how many of the photographs will be admitted. It is enough for now to say that the photographs will not be excluded *en masse*. To do so would be an abuse of discretion.

### Motion 13 [#157] —To Bar Plaintiff's Expert, Dr. Craig Williams

The motion is granted in part and denied in part without prejudice. The motion has three parts: First, it argues that Dr. Williams should not be allowed to testify as to whether plaintiff's injury will have a specific cultural significance and religious and cultural implications because he is not an expert in the Hindu culture, and his opinion is based on hearsay from a Hindu colleague and the Plaintiff's opinion. Defendant's motion barring Dr. Williams from testifying as to cultural and religious implication is granted. The doctor may not testify about plaintiff's statements about this topic because they are hearsay and not being reasonably pertinent to an orthopedic surgeon providing a diagnosis or treatment are not within the hearsay exception in Rule 803(4).

Defendant also moves to bar Dr. Williams' opinion insofar as it is based on the results of a functional capacity test performed by a hand therapist. The motion is denied without prejudice to showing that these reports are the type normally relied upon by surgeons in formulating opinions. *See Sommerfield v. City of Chicago*, 254 F.R.D. 317 (N.D. Ill. 2008)("While the sources of an expert opinion need not be admissible in evidence, they must be reliable" . . .The "cases teach that under Rule 703, an expert may rely on hearsay in formulating his opinion if it is of the type

reasonably relied on by experts in the field, and that the evidence is not admissible for the truth of the matters asserted."); *Loeffel Steel Products, Inc. v. Delta Brands, Inc.*, 387 F.Supp.2d 794, 808 (N.D.Ill. 2005)("while Rule 703 was intended to liberalize the rules relating to expert testimony and the bases on which that testimony could be based, it was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion."). If they are not, the testifying expert merely becomes the "mouthpiece of a scientist in a different specialty. That would not be responsible science." *Dura Automotive Systems of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609 (7th Cir. 2002).

Defendant also argues that Dr. Williams' testimony is cumulative and therefore should be barred. This aspect of the motion is denied without prejudice. First, Rule 403 does not bar cumulative testimony, only "needlessly" cumulative testimony. It is impossible at this stage to make that determination. *See, e.g., Baldwin Graphic Systems, Inc. v. Siebert, Inc.*, 2006 WL 3718074 (N.D. Ill. 2006)(court denied motion to exclude duplicative expert testimony, because it said that it could not know if the second expert was to be duplicative until it heard the second expert); *Green v. Schutt Sports Mfg. Co,* 2006 WL 5127517 (N.D. Tex. 2006)(denied motion to exclude because duplicative, but stated that party was free to raise the objection at the time of the individual's testimony if it in fact was duplicative).

### Motion 15 [#158] — To Bar Post Accident Investigation and Use of Term Safety Latch

This motion seeks to bar: 1) a post-accident investigation report; 2) any witnesses commenting on what occurred during the post-accident investigation; and 3) the use of the term "safety latch" by any witnesses, by plaintiff, and by plaintiff's counsel.

## Part 1 – The Post Accident Investigation Report

### a.

The defendant seeks to bar an accident investigation report prepared by the plaintiff's employer, CIBA Vision, after the plaintiff's accident on the ground that it is a self-serving document, based on hearsay and is not a business record that would qualify for admission under the hearsay exception for records of a regularly conducted activity. *See* Rule 803(6). It should be noted at the outset that it is not a valid objection that evidence is self-serving, and there is no rule of evidence that warrants, let alone requires, exclusion on that ground.

The objection that evidence is "self-serving" requires some explanation since its very felicity has led to uncritical repetition and misapplication. *Compare Tiller v. Atlantic Coast Line R. Co.*, 318 U.S. 54, 68 (1943)(Frankfurter, J., concurring)("A phrase begins life as a literary expression; its felicity leads to its lazy repetition; and repetition soon establishes it as a legal formula indiscriminately used to express different and sometimes contradictory ideas."). All testimony – and all documents – offered by or on behalf of a party may fairly be said to be self-serving. That is why they are offered. *See Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir.2003); *United States v. Bucur*, 194 F.2d 297, 301 (7th Cir.1952). As Learned Hand long ago showed, there is no rule of evidence that warrants, let along requires, exclusion on the ground that the evidence is self-serving. *See United States v. Matot*, 146 F.2d 197, 198 (2d Cir.1944) (L.Hand, J.); *Wilson v. McRae's, Inc.*, 413 F.3d 692, 694 (7th Cir.2005)(Easterbrook, J.); *Dalton v. Battaglia*, 402 F.3d 729, 734-35 (7th Cir.2005);

*McGowan v. Deere & Co.*, __F.3d__, 2009 WL 2901931 at *3 (7ᵗʰ Cir. 2009)(summary judgment affidavits not excludable because "self-serving."); *Payne*, 337 F.3d at 772 (7th Cir.2003)(same). [7]

Properly understood, the objection that evidence is self-serving is a shorthand way of saying that it lacks an appropriate evidentiary foundation in the record, that it is conclusory, that it is not based on personal knowledge as required by Rule 602, Federal Rules of Evidence, or that the evidence is hearsay. As the Fourth Circuit has said, the objection that the evidence is self-serving "is a misnomer that ought to be interred. It has long obscured the proper application of the hearsay rule to the reception of evidence, and is not an independent ground for objection." *Chestnut v. Ford Motor Co.*, 445 F.2d 967, 972 (4th Cir. 1971). *Accord Chicago Milwaukee St. Paul and Pacific RR v. Alva Coal Corp.*, 365 F.2d 49, 56 (7th Cir. 1966).

Plaintiff argues that it was the custom and practice of CIBA that following an injury, CIBA personnel would conduct an internal investigation, and therefore the report of the investigation is admissible under Rule 803(6). Reliance is placed on *Crimm v. Missouri Pacific R. Co.*, 750 F.2d 703 (8th Cir. 1984)(affirming admission of investigative report pursuant to business record exception). However, the Eighth Circuit came to this conclusion based on the fact that MoPac had a written policy requiring that in an investigation of sexual harassment the conversations of those interviewed "should be documented through written memoranda." The notes and report in the *MoPac* case were prepared nine months before any complaint or suit had been filed. In *Sana v. Hawaiian Cruises, Ltd*, 181 F.3d 1041 (9th Cir. 1999), the Ninth Circuit affirmed the admission of the post-accident investigation because the court found that the rationale for its exclusion as having

---

[7] Statements of motive, intent and mental state, admissible under Rule 803(3), are not excludable even when highly self-serving. *United States v. DiMaria,* 727 F.2d 265, 271 (2nd Cir.1984) (Friendly, J.).

23

been prepared in anticipation of litigation was not present since the defendant's insurer had no incentive to gather evidence of crew member's illness, and thus the report had circumstantial guarantees of trustworthiness stemming from duties to report.

There is no showing that the guarantees of trustworthiness that the Eighth and Ninth Circuits found in the above cases are present here, and there is no claim that the residual exception to the hearsay rule relied on in *Sana* allows admissibility. In any event, that argument would be a nonstarter. At least on the state of the present record, it cannot be said that the investigation was not made with an eye toward litigation of some sort by Ms. Thakore. The fact that the report might have been made in the regular course of the employer's business does not automatically make the evidence admissible under Rule 803(6), Federal Rules of Evidence.

In *Melendez-Diaz v. Massachusetts*, 129 S.Ct. 2527 (2009), the Supreme Court reviewed its decision in *Palmer v. Hoffman*, 318 U.S. 109 (1943) and reaffirmed the Court's refusal to include accident reports under the business records exception to the hearsay rule since they lack the regularity that insures reliability that permits the evidence to be received without cross-examination. In *Palmer,* the engineer of the train involved in an accident gave a statement to an assistant superintendent who was interviewing him pursuant to railroad policy that required post-accident investigations. The Court unanimously held that this statement and the report containing it did not fall within the business record exception to the hearsay rule: "We do not think [the statement] was made 'in the regular course' of business within the meaning of the Act [making admissible any writing or record made in the regular course of business and where it was part of the regular course of business to make that writing or record]. The business of the petitioners is the railroad business .... An accident report may affect that business in the sense that it affords information on which the

management may act. It is not, however, typical of entries made systematically or as a matter of routine . . . The fact that a company makes a business out of recording its employees' versions of their accidents does not put those statements in the class of records made 'in the regular course' of the business within the meaning of the Act . . . . In this case those reports are not for the systematic conduct of the enterprise as a railroad business . . . these reports are calculated for use essentially in the court, not in the business. Their primary utility is in litigating, not in railroading."

This distinction made in *Palmer* and reaffirmed in *Melendez-Diaz,* 129 S.Ct. at 2538, applies with even greater force here. Accidents in railroading and other large scale industries, it may be assumed, occur with far greater frequency than accidents at CIBA Vision's plant involving the kind of machinery that injured Ms. Thakore. Nonetheless, the business records exception to the hearsay rule has not allowed accident reports to be admitted in federal trials, even when they are not uncommon in a given industry because by their very nature they do not involve the kind of systematic activities whose very repetitiveness insures that degree of reliability and accuracy that allow the report to be received in evidence without cross-examination. Each accident, by necessity, will involve its own separate and distinct set of facts, causal factors and responses. The investigations are, in short, the anthesis of the kinds of "regularly conducted activity" that Rule 803(6) envisions and which the common law business records exception to the hearsay rule have always required for the exception to allow admissibility of otherwise hearsay records.

An examination of the report the plaintiff seeks to have admitted demonstrates that it is plainly not the kid of memorandum, report, record or data compilation of events, conditions, opinions or diagnoses based upon "information transmitted by, a person with knowledge," and that it was the regular practice of that business activity to make such a report, as required by Rule 803(6).

For example, the report is based upon something called a "TapRoot Root Cause Tree" which is a labyrinthine chart, devised and used within CIBA Vision (Dep. of Shankar Sarkar at 32-33)[8] listing scores of possible causes or events resulting in the accident, which the author of the report is required to go through in order to determine the ultimate cause of the accident. Indeed, at the very top of the chart the investigator is instructed: "START HERE with each causal/factor/issue and select or eliminate each category to find root causes." (Ex. 1 to Motion to Bar Post-Accident Investigation). There is obviously nothing routine about the kind of investigation mandated by the TapRoot methodology, and each investigation will yield a completely different set of answers, issues and causes.

Not only is there no evidence to support the reliability of the methodology underlying the TapRoot chart, it is impossible to determine who provided the underlying factual information on which their conclusions are based and whether those persons were persons with knowledge, as Rule 803(6) explicitly requires. Indeed, some of the evidence makes clear that the declarants were repeating merely what they had been told by people whose knowledge was uncertain. At his deposition, Mr. Shakar said that most of the information about the accident came from Mr. Hack. (Tr. 20). But Mr. Hack had no first hand information.

The reality is that the so-called accident report is functionally equivalent to an expert report under Rule 26 – but without the informative detail that Rule 26 requires in order that there can be an intelligent assessment of the basis on which the expert's conclusions rest. The report, which purports to follow the instructive chart, is nothing more than a series of "unadorned conclusion[s],"

---

[8] Mr. Sakar testified that he was "sure it's used by other companies, too," (Tr. 32-33), but never named another company and thus the present record does not allow me to conclude that the methodology used by CIBA Vision is used anywhere else.

*N.L.R.B. v. Indianapolis Mack Sales & Service, Inc.*, 802 F.2d 280, 284 (7th Cir. 1986), about what the authors collectively believed caused the accident, without explanation or identification of the sources of the information. Yet, an expert report (or opinion) that supplies nothing but a bottom line supplies nothing of value to the judicial process. *Minasian v. Standard Chartered Bank, PLC,* 109 F.3d 1212, 1216 (7th Cir. 1997).

This is not to say that because the report is the functional equivalent of an expert report which does not comply with Rule 26(a)(2), Rule 26 requires that it be excluded. But even evidence that fits within an exception to the hearsay rule is not automatically admissible. It must be relevant under Rule 401, *United States v. Harvey*, 959 F.2d 1371, 1375 (7th Cir. 1992), and it must pass muster under Rule 403. *Mister v. Northeast Illinois Commuter R.R. Corp.*, 571 F.3d 696 (7th Cir. 2009). Allowing the jury to receive this report as an exception to the hearsay rule would run afoul of Rule 403 even if it could be tortured to fit the mold of Rule 803(6).

For example, the report concludes that Ms. Thakore "had followed proper operating procedures" and was "wearing heat resistant gloves." The authors had no first hand knowledge, as they conceded at their depositions. The report discusses how the authors, all CIBA Vision employees, think the machine ought to work, how long Ms. Thakore's hand was caught in the machinery, the extent of her burns and fractures, how Ms. Thakore was released from the machine, etc. The report concludes that one of the machines "had already been equipped with redesigned [*inherently safer*] bolt type latch mechanism" to prevent what occurred to Ms. Thakore. (Brackets in original)(Emphasis supplied). The report states that the accident stemmed from "Equipment Difficulty – Design – Design Specs – 'Specs Need Improvement'". No explanation is given for the conclusion. Later, the report goes on to conclude in bold face type: "Improper design of the safety

latch system. If the latch system would have functioned as designed, the press plate could not have fallen, trapping Ms. Thakore's hand in the die." The report concludes without any explanation, that the design of the machinery did not meet a whole series of listed, technical standards.

That the report plaintiff seeks to have admitted is the functional equivalent of an expert report in the sense contemplated by Rule 702 is beyond debate, stating as it does conclusions about the cause of the accident and the safety of the original design of the latch and the comparative safety of the new latch design. The validity of these conclusions depend on the authors possessing specialized knowledge. Without that expertise, the conclusions have no meaning and cannot assist the trier of fact. The report would be inadmissible under Rule 403, even if it somehow satisfied the hearsay rule. [9]

But let us assume that the authors of the report had sufficient expertise to arrive at the conclusions they did. Nonetheless, their conclusions must be based on sufficient facts or data and must be the product of reliable principles and methods reliably applied to the facts of the case, as Rule 702 requires. If they are not, even though the hearsay exception relied on by Ms. Thakore may be applicable, the report, itself, should be excluded under Rule 403. The Seventh Circuit's recent decision in *Mister v. Northeast Illinois Commuter R.R. Corp.*, 571 F.3d 696 (7th Cir. 2009) makes the point. There, a Magistrate Judge erroneously concluded that an accident report could not constitute a party admission under Rule 801(d)(2)(D), because the statements were not based on first hand knowledge. She thus held the statement inadmissible under the hearsay rule and that it was

---

[9] As the functional equivalent of an expert report, the report ought to satisfy the strictures of Rule 26(a)(2). But I need not reach the issue of whether Rule 702 and Rule 26(a)(2) are a sufficient basis, alone, to exclude the report given the conclusion that the report does not fall within 803(6) and runs afoul of Rule 403.

inadmissible under Rule 403 even if it was not hearsay. The Court of Appeals held that the party admission rule did not require that information be based on first hand knowledge and that the Magistrate Judge's contrary conclusion had been in error. However, the court affirmed because the Magistrate Judge had the discretion under Rule 403 to exclude the report because she could reasonably have concluded that the multiple levels of hearsay rendered the report unreliable.

But to comport with Rule 403, a report that does nothing but list a series of highly specialized conclusions without explanation is "unfairly" prejudicial. It would allow the jury to be exposed to conclusions about the ultimate issues in the case without having any basis to evaluate the reliability of the methodology used to arrive at those conclusions and the validity of the conclusions themselves. The jury would be put in a take it or leave it position and forced to guess at what to do.

"'The soundness of a conclusion may not infrequently be tested by its consequences.'" Posner, Cardozo: A Study in Reputation, 118 (1990). Applying that test to report results in the oddest of results. Under the plaintiff's view, a report like that prepared by CIBA Vision should be admissible in evidence despite its skeletal and conclusory quality, even though an expert report that satisfied the strictures of Rule 26(a)(2) – and thus was far more informative and soundly based – could not be received in evidence, for expert reports under Rule 26 are not independently admissible. *See* Rules 403 and 801-802, Federal Rules of Evidence; *N.A.A.C.P. v. A.A. Arms, Inc.*, 2003 WL 2003750 (E.D.N.Y. 2003); *United States. v. Kiewit Construction Co.*, 2005 WL 1277953 (D.Alaska 2005); *Granite Partners, L.P. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2002 WL 826956 (S.D.N.Y. 2002); *Ake v. General Motors Corp.*, 942 F.Supp.869 (W.D.N.Y. 1996); *Herrin v. ENSCO Offshore Co.*, 2002 WL 465199 (E.D.La. 2002); *Fortier v. State Farm Mutual Automobile Ins Co.*, 2000 WL 1059772 (E.D.La. 2000); *Springer v. K-Mart Corp.*, 1998 WL 883318 (E.D.La.

1998); *Gentieu v. Tony Stone Images/Chicago, Inc.*, 214 F.Supp.2d 849 (N.D.Ill. 2002); *WestFed Holdings, Inc. v. United States*, 55 Fed.Cl. 544 (2003). It may be noted in this regard that the Conference Committee comments to the proposed amendments to Rule 26 state that expert reports themselves are not admissible.

If comprehensive Rule 26(a)(2) reports are not admissible because they are needlessly cumulative and violate the hearsay rule, the kind of uninformative, skeletal and conclusory report offered by the plaintiff surely ought not be admissible even if it falls within an exception to the hearsay rule. Assuming that the plaintiff's experts will opine on the cause of the accident and that they will conclude, as did the CIBA Vision employees, that the accident was caused solely by the defendant's machine and its inadequacies, the report will add nothing to that testimony.

There is a final consideration that requires that the skeletal and unexplained report be excluded. The Seventh Circuit has repeatedly held that reports prepared with an eye toward litigation, even though made in the course of the business's operations, are not admissible under Rule 803(6). *See Lust v. Sealey*, 383 F.3d 580 (7th Cir. 2004); *United States v. Blackburn*, 992 F.2d 666, 670 (7th Cir. 1993). *Cf. Neal v. Whirl Air Flow Corp.*, 43 Ill.App.3d 266, 275, 356 N.E.2d 1173, 1179 (3rd Dist. 1976)(trial court did not abuse its discretion in refusing to admit an accident investigation report); *United States v. Bortnovsky*, 1988 WL 93833 (S.D.N.Y. 1988)(insurance adjuster's report not admissible under Rule 803(6) because it lacks the guarantee of reliability inherent in a duty by each declarant to report what is contained in the record).

In *Gulf Insurance v. Kingman*, 61 F.3d 905 (7th Cir. 1995), the Vice President of Joy Truck Lines, in conducting an investigation of an accident involving one of its trucks, interviewed the driver, who had just been fired by Kingman. The Seventh Circuit held that "taking statements during

the investigation of an accident is not part of the normal course of the trucking business." The court in *Ebenhoech v. Koppers Industries, Inc*, 239 F.Supp.2d 455 (D.N.J. 2002), concluded that a post-accident report did not fall within Rule 803(6): "while the report is relevant, this Court finds that it is not admissible. Defendant admits that it is hearsay, but argues that the regularly conducted activity exception and the statement against interest exception to the hearsay rule allow the admission of the report. This Court finds that neither exception applies . . . . [T]he report is not admissible as a record of a regularly conducted business because (1) it was prepared with the knowledge that the event could lead to litigation and (2) it was not routinely created . . . [The exception] was meant to 'admit into evidence entries of a purely clerical or routine nature not dependent upon speculation, conjecture or opinion . . . . This Court finds that a report created after an "unusual incident" . . . and led to the "uncertain consequence" of "injury" is not a report made in the regular course of business."

The Fourth Circuit also determined that a post-accident report is not advisable under 803(6) in *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200 (4th Cir. 2000). In *Sinkovich*, the court held that "[t]he absence of trustworthiness is clear [ ] when a report is prepared in the anticipation of litigation because the document is not for the systematic conduct and operations of the enterprise but for the primary purpose of litigating . . . . Regardless of whether the report was compiled as part of an internal investigator with in house employees or whether an outside investigator was hired to prepare the report, the conclusion remains that the primary motive for initially preparing the report was to prepare for litigation . . . The primary motive for preparing the report is a better indicator of trustworthiness than form of investigation or identity of investigator."[10]

---

[10] Cases that allow the introduction of investigative reports are distinguishable from the instant case. *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153 (1988) admitted a Navy investigative report of an air crash
(continued...)

Finally, there is the problem of hearsay within hearsay under Rule 805 of the Federal Rules of Evidence. Rule 805, which governs claims of admissibility under Rule 803(6), requires that in instances of multiple levels of hearsay, each level of hearsay must qualify as an exception in order for the document to be admitted. *United Sates v. Vigneau*, 187 F.3d 70, 76 (1st Cir. 1999); 4 Weinstein's Evidence, § 803.08[2] at 803-58.2. Thus, merely because a document is itself a business record under 803(6)does not mean that it is admissible if it contains multiple hearsay. *Certain Underwriters v. Sinkovich*, 232 F.3d 200, 205 (4th Cir. 2000).

For example, suppose it was part of the regular and ordinary course of business for an employee to record incoming calls from third parties and that the transcription was in the regular and ordinary course of the employee's duties. While the recordation by the employee would qualify under 803(6) – if offered merely to show the fact of the recordation or that a call or letter had been received – that which was recorded would plainly be hearsay if offered for its truth. Thus, the record would be inadmissible, unless the recorded declarations of the third party were admissible for a non-hearsay purpose. *See United States v. Patrick*, 959 F.2d 991 (D.C. Cir. 1992); *United States v. Lieberman*, 637 F.2d 95, 100 (2d Cir. 1980). *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 729

---

[10](...continued)
which concluded that pilot error was the most likely cause of the crash. That case involved a different exception to the hearsay rule. Instead of deciding whether the investigative report fell under the business records exception, the Court decided the issue under Rule 803(8)(C), which deals with public offices or agencies. *Villalba v. Consol. Freightways Corp. of Delaware*, 2000 WL 1154073 (N.D. Ill. 2000) noted that there was a split in the cases concerning whether the conclusions of a post-accident investigation are admissible under Rule 407. However, none of the cases cited by the *Villalba* court looked at whether post-accident investigation was hearsay and whether it fell under an exception. Instead, all of the cases cited by the *Villalba* court dealt with whether a post-accident report was prohibited under Rule 407.

(10th Cir. 1993) (hearsay statements from third parties contained in business records preclude the business record from qualifying under Rule 803(6)).[11]

## Part II – Testimony regarding Post-Accident Investigation

### b.

The majority of the motion is devoted to arguing for the exclusion of opinions and testimony at trial by the individuals who actually conducted the investigation on the day the accident occurred. The motion contends that the prospective witnesses do not qualify as experts under *Daubert v. Merrel Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). It is also argued that these individuals were not properly disclosed as experts, and two of the potential witnesses were not deposed. Defendant also argues that no foundation has been laid so that it may be concluded that they were familiar with the equipment they tested in their post-accident investigation.

The plaintiff's response is that observations by CIBA personnel of what occurred during the post-accident investigation and testing does not implicate the hearsay rule and that the individuals were disclosed as experts by both sides. The testimony of what occurred and what was observed, it is contended, is not expert testimony, and in any event, no expert report was required because the CIBA personnel involved in the post-accident investigation were not "retained or specially employed

---

[11] The multiple hearsay problem also occurs frequently in public records and reports under Rule 803(8). For example, in *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991), the plaintiff was injured in an explosion and immediately identified the cause to his neighbor. The statement qualified as an excited utterance under Rule 803(2). The neighbor reported what he had been told to the police, who prepared a report, which was admitted under Rule 803(8), the public records exception. The court of appeals reversed since there were three levels of hearsay, but only two qualified as exceptions. The report was a public record, and the plaintiff's statement to the neighbor qualified as an excited utterance under Rule 803(2). But the neighbor's rendition of the events to the police fell within no exception.

to provide expert testimony." Rule 26(2)(B). Lastly, the Plaintiff argues that at this stage it is sufficient that the witnesses have been properly disclosed as experts and that the record is insufficient for the court to determine which of the witnesses may or may not be qualified to render expert opinions.

What the witnesses saw and did is not hearsay, and to the extent the objection to the evidence of what people did is based on Rule 802 it is denied. However what they were told by others about the accident is hearsay if offered for its truth and must be excluded. Rule 802. To the extent that what the witness was told is offered only to explain why the witness did something, it is not hearsay. *Smith v. Great American Restaurants, Inc.*, 969 F.2d 430 (7th Cir. 1992); *United States v. Bowser*, 941 F.2d 1019, 1021 (10th Cir. 1991).

There is, however, a real danger that the jury would not be able to consider the statements from third parties relating how the accident occurred – for their non-hearsay purpose, and thus the statements ought to be excluded pursuant to Rule 403. Often, and this is one of those times, the jury cannot remain oblivious to the substantive/hearsay aspects of a statement, and instructing it to consider the evidence solely for its non-hearsay purpose is often an admonition to perform a mental gymnastic beyond its powers. *Bruton v. United States*, 391 U.S. 123 (1968); *Nash v. United States*, 54 F.2d 1006, 1007 (2d Cir. 1932)(L. Hand, J.), as in Mark Twain's story of the boy told to stand in a corner and not think of a white elephant. *United States v. Antonelli Fireworks Co.*, 155 F.2d 631, 656 (2d Cir. 1946) (Frank, J., dissenting). To tell someone not to "think about the beast is to assure at least a fleeting mental image." *United States v. DeCastris*, 798 F.2d 261, 264 (7th Cir. 1986).

34

The most articulate discussion of the problem is Justice Cardozo's in *Shepard v. United States*, 290

U.S. 96 (1933).[12]

More importantly, it is impossible to conclude on the present record that what was done

during the "testing" of the machine replicated what occurred at the time of the accident. In order to

allow witnesses to testify to what they observed during post-accident testing, it must be clear that

the conditions during that testing were the same as those that existed at the time of the accident. The

burden to demonstrate the requisite degree of similarity is on the party offering the evidence. *See*

*Bouchard v. CSX Transp., Inc.*, 2006 WL 5347773 (W.D. Pa. 2006); *Gilbert v. Cosco, Inc.*, 989 F.2d

399, 402 (10th Cir.1993); *Glick v. White Motor Co.*, 458 F.2d 1287 (3rd Cir. 1972)("Experimental

evidence is admissible so long as it is relevant and probative, and such evidence has probative value

if the conditions of the experiment are identical with or similar to the conditions of the transactions

in litigation. *Cf. Lolie*, 502 F.2d at 744 ("Plaintiff offered no evidence that the clips used in the other

mine were comparable, in terms of characteristics and quality, to those manufactured by defendant.

She thus failed to lay a proper foundation for the admission of the 'similar happenings' evidence.").

Absent the requisite correlation, the comparison cannot "logically advance[ ] a material aspect of the

proposing party's case. *Daubert, v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1315 (9th

Cir.)(Kozinski, J.), *cert. denied*, 516 U.S. 869 (1995).

Plaintiff has not shown the testing was done in a manner replicating what occurred at the time

of the accident. Of course, the plaintiff's trial testimony can furnish the requisite foundation. But that

---

[12] Of course, juries generally presumed to follow instructions, *United States v. Emerson*, 501 F.3d 804, 813 (7th Cir. 2007), and the structure of the Federal Rules of Evidence recognizes that they can do so even when fine distinctions between permissible and impermissible purposes for which the evidence is admitted must be made. *See* Rules 105, 404(b) and 407. But there are limits and they would be exceeded in this case if the jury was allowed to hear hearsay explanations about the cause of the accident.

determination cannot be made now. What is clear, is that in his deposition, Mr. Sarkar admitted that

prior to the post-accident observation he did not talk to the Plaintiff to learn what had occurred. Mr.

Hack admitted in his deposition that he did not know much about how the machine worked and did

not even know the latch existed. Hack admitted he was not "totally familiar with machine operation"

and therefore needed help to make the machine function in his post-accident investigation. Mr.

Clearwater admitted in his deposition that he was not present when the accident occurred, was in and

out during the post-accident investigation, and that he had never seen the latch before that day. The

other two proposed experts/witnesses were not deposed and it is not explained why they were not

deposed.[13] As the proponent of the evidence, the burden is on the plaintiff and she has not sustained

it. Therefore, the motion is granted. Judge Gettleman may wish to revisit the issue at trial if the

appropriate evidentiary foundation can be established.

### Part III – Motion To Bar Use Of The Term 'Safety Latch'

#### c.

In a one-paragraph argument, the defendant contends that all witnesses and attorneys should

be barred from using the term "safety latch" because the term is misleading and prejudicial and is

---

[13] *Compare Loeffel Steel Products, Inc.* 387 F.Supp.2d at 812 (citations omitted):

"In order for the sampling chosen by DVC comparison to have the requisite predictive capacity and the reliability *Daubert* demands, Mr. Dohmeyer had to "select samples that are truly comparable. To put it another way, care must be taken to be sure that the comparison is one between apples and apples' rather than one between apples and oranges. "In calculating lost future profits or lost business, the measure of damages is guided by analysis of "comparable businesses in the area."). "[T]he business used as a standard must be as nearly identical to the plaintiff's as possible." This is often referred to as the "yardstick approach." Absent the requisite showing of comparability, a damage model that predicts either the presence or absence of future profits is impermissibly speculative and conjectural."

beyond the expertise of lay opinion witnesses. Plaintiff responds by arguing that the cases cited by the Defendant are not relevant and do not support his position, but cites no cases of her own. Plaintiff also relies on the statement in the denial of summary judgment that "whether the ultimate goal was to preserve the integrity of the product or to avoid injury to workers (or both) is of little consequence, because in either case, the undisputed purpose of the latch was to hold the platen up in the absence of pneumatic pressure." Plaintiff also argues that since CIBA Vision employees relied on the latch to perform a safety function they should be able to call it a safety latch, and Defendant can argue that CIBA employees should not have understood the latch to serve a safety function.

What the employees may have thought the purpose of the latch was is not determinative; the questions for the jury are: what *was* the purpose of the latch; who designed it; and was the machine unreasonably dangerous when it left the manufacturer? All of this can be explored through direct and cross examination of the witnesses, and it will be for the jury, under proper cautionary instructions from the court and under final instructions, to make those determinations. To grant this motion would effectively decide the issue in advance of trial and by the wrong decision maker. The parties will be free to introduce whatever evidence supports their respective positions regarding the purpose of the latch, and it will be for the jury, having heard the evidence, to make the ultimate determination.

Defendant's motion to exclude the term, safety latch, is denied. "Juries are not leaves swayed by every breath." *United States v. Garsson*, 291 F. 646 (S.D.N.Y. 1923)(L. Hand, J.). We entrust them to make assessments of all manner of evidence and issues in the most complicated of cases, confident in their ability to follow jury instructions and make principled and informed decisions. It is simply unpersuasive to suggest that in the context of this case, use of the term, safety latch, will *unfairly* prejudice the jury, Rule 403, in the sense that it will decide the case not on the facts but on

some emotional basis or other improper basis. *Cf. Old Chief v. United States*, 519 U.S. 172, 180 (1997).

**Motion 17 [#160] – To bar Plaintiff's expert, Anthony M. Gamboa, from testifying**

The motion seeks to bar Mr. Gamboa from giving testimony on future economic damages because, the defendant argues, he does not meet the requirements *Daubert* requires for a witness to be permitted to testify under Rule 702, Federal Rules of Evidence. Specifically, the defendant argues that Mr. Gamboa lacks the training and education required to give expert opinion because his work has not been peer reviewed; and his methodology was used for this litigation. In addition, it is contended that Mr. Gamboa's assumptions are speculative, lack foundation, and are based on unreliable data. The motion is denied.

The admissibility of expert testimony is governed by the Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). In evaluating the admissibility of expert testimony, the district court must determine whether: (1) the proposed witness would testify to valid scientific, technical or other specialized knowledge; and (2) his testimony will assist the trier of fact. *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 816 (7th Cir.2004). The witness must be a relevant field and the methodology underlying the expert's conclusions must be reliable. *Id.*

"The focus of the district court's *Daubert* inquiry must be solely on principles and methodology, not on the conclusions they generate." *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir.2002). In making the determination of whether the expert's testimony is reliable, *Daubert* instructs the district courts to look at four, non-exclusive factors: (1) whether the scientific theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication;

(3) the theory's known or potential rate of error when applied; and (4) whether the theory has been 'generally accepted' in the scientific community.

The flexibility of the inquiry envisioned by Rule 702, the illustrative nature of the *Daubert* factors, and the considerable leeway a trial judge must have in deciding whether expert testimony is reliable, were dominant themes of *Kumho Tire Co. Ltd. v. Carmichael,* 526 U.S. 137 (1999). The Court held that the basic screening obligation created in Daubert to insure reliability of scientific testimony applies equally to testimony based on technical or other specialized knowledge. *Id.* at 141. Since the gatekeeping inquiry must be tied to the facts of the particular case, the Court held that a trial court may-but is not required to-consider one or more of the more specific factors that Daubert mentioned when doing so will help determine the testimony's reliability. But, the Court stressed, those factors, which were meant to be helpful, not definitive," neither necessarily nor exclusively apply to all experts or in every case. *Id.,* at 142. Their applicability will depend on " 'the nature of the issue, the expert's particular expertise, and the subject of his testimony.' " The procedure employed will depend largely on the particular circumstances of the particular case at issue." *Id.,* at 150.

Rule 702 expressly contemplates the admission of testimony by experts whose knowledge is based on experience, as well as knowledge, skill, training, or education. *Trustees of the Chicago Painters & Decorators Pension, Health & Welfare, and Deferred Savings Plan Trust Funds v. Royal Int'l Drywall & Decorating, Inc.*, 493 F.3d 782, 787 (7th Cir.2007). Of course, expert opinion must have an analytically sound basis so that it is not speculation in disguise. *Smith v. Ford Motor Co.,* 215 F.3d 713, 719 (7th Cir.2000); *Mintel Intern. Group, Ltd. v. Neergheen,* _F.Supp.2d_, 2009 WL 1033357 at *3 (N.D.Ill. 2009).

While Mr. Gamboa does not have a background in economics, he does have his MBA from the University of Chicago and has completed postdoctoral study in economics and finance at various universities. He has training in the area in which he will be testifying. He is a Senior Analyst and CEO of a forensic vocational economic consulting company. He formerly worked at the United States Department of Health and Human Services as a Vocational Expert. In addition, Mr. Gamboa's testimony will be based on his knowledge and experience working for the past twenty years using statistics to determine how disabilities will impact a person's ability to work. This is enough to qualify him as an expert for purposes of this case. *See United States v. York*, 572 F.3d 415 (7th Cir. 2009); *Loeffel Steel Products, Inc.* v. Delta Brands, Inc., 372 F.Supp.2d 1104, 1113 (N.D.Ill. 2005)(collecting cases).

Mr. Gamboa relied on a study conducted by the U.S. Census Bureau, which he has used throughout his career and to which he applies his education and experience to try to account for the admitted limitations of the study. The methodology of using worklife expectancy tables has been peer reviewed. Gamboa has been allowed to testify 35 times in the past two years. Other courts have heard challenges to Mr. Gamboa and have found him competent to render expert opinions. The district court for the Eastern District of Pennsylvania found that "the Worklife Expectancy table really represents a statistical exercise constructed to estimate economic loss, and is not expected to reflect actuality. The weight and credibility of the data relied upon to construct the table may be challenged on cross-examination at trial." *Montgomery v. Mitsubishi Motors Corp.*, 2006 WL 1147616 (E.D.Pa. 2006). After all, as *Daubert* stressed, this is one of the traditional tools that should be used to test the validity of expert testimony. 509 U.S. at 596.

In 2008, Mr. Gamboa was found qualified to make calculations and projections regarding future care and present lost income for the plaintiff in *Petersen v. Union Pacific R. Co.*, 2008 WL 2704746 (C.D. Ill. 2008). In an Illinois state case in 2006, *Shaheen v. Advantage Moving and Storage, Inc.*, 369 Ill.App.3d 535, 860 N.E.2d 375 (1st Dist. 2006), defendants tried to bar Mr. Gamboa from testifying regarding his estimate of the value of plaintiff's lost earning capacity. In that case, Mr. Gamboa testified that he based his estimate of diminished earning capacity on an interview with plaintiff and data concerning plaintiff's earnings, age and education, in conjunction with government statistics. The Illinois Appellate Court found that "Dr. Gamboa provided an adequate foundation for his opinion with his credentials and his use of data typically used by persons in his profession."

In 2000, a state court in Ohio was asked to bar an expert who relied on Mr. Gamboa's tables. *Nilavar v. Osborn*, 137 Ohio App.3d 469, 738 N.E.2d 1271 (2nd Dist. 2000). Despite finding that the plaintiff had not provided evidence that the Gamboa study had been subjected to peer review – peer review will seldom be found where the expert is involved in a non-scientific field – or had been generally accepted by the scientific community, these factors are not prerequisites to admissibility under *Daubert* – and thus the court held that the expert was qualified to testify. According to the Ohio state court, "[t]he Gamboa study was based on data from the Current Population Survey by the U.S. Department of Commerce, Bureau of Census. The Gamboa study had been published for at least nine years at the time of trial . . . other experts [ ] relied on it" and "[i]t has been held that regression analyses like the Gamboa study 'are generally considered reliable disciplines.'" (*citing State of Ohio ex. rel. Montgomery v. Louis Trauth Dairy, Inc.*, 925 F. Supp. 1247 (S.D.Ohio 1996).

For all of these reasons, Mr. Gamboa will be allowed to testify as to Plaintiff's future economic losses, subject of course to whatever evidentiary objections may be appropriate at trial.

## Motion 12 [#161] —To Bar CIBA's Pre and Post Accident Remedial Measures

Earlier, the plaintiff sought to bar evidence of CIBA Vision's post accident "remediation." The defendant objected and wanted the evidence admitted. Now it is the defendant who insists that pre and post accident "remediation" must be excluded, and it is the plaintiff who wants the evidence admitted.

Specifically, the defendant seeks to bar evidence that *prior* to Ms. Thakore's injury, CIBA Vision modified the latch mechanism on one of the heat seal machines manufactured by Universal. According to the plaintiff, CIBA Vision intended to modify the latch designs on each of the heat platens on the other machines because of safety concerns over the latch, but had not finished the modifications when Ms. Thakore was injured while working on one of the unmodified machines. After the plaintiff was injured, CIBA Vision replaced the old latch on that machine with the newer version it had designed.

Plaintiff initially did not respond to the defendant's motion. I gave leave to the plaintiff to file a response, and she has done so. [#184]. The response represents that the evidence it plans to introduce will include: a) testimony of factual observations by CIBA Vision personnel, who took part in the process modifying the latch mechanism; b) testimony by certain CIBA Vision personnel based on their knowledge of the incidents leading to the latch malfunction; and c) the documented findings and conclusions reached by CIBA Vision as a result of the modifications. (Response at 2). The response cites no cases that deal with the substantive issue presented by the defendant's motion. Rather, it merely cites general propositions about relevancy and Rule 403. But general propositions

do not decide concrete cases, as Holmes was fond of saying, and as Judge Posner delights in repeating.

To the extent that the defendant's motion is based on Rule 407, it is denied for the reasons discussed in the ruling on Motion #153– namely that Rule 407 does not apply to third parties, nor does it apply to evidence of pre-accident remediation. The policy underlying Rule 407 is designed to encourage potential defendants to remedy hazardous conditions without fear that their actions will be used as evidence against them. That policy necessitates exclusion of evidence of subsequent repairs *by a defendant* when offered against the defendant to prove fault. However, exclusion is obviously not required where the repairs are made by a non-party, for in that context there is no admission by the defendant and thus nothing to deter it from making post-accident repairs. The Courts of Appeals, therefore, have uniformly held that Rule 407 does not require exclusion of evidence of subsequent repairs where those repairs were made by someone other than the defendant. *See supra* at 2, *et seq.*; *Steele, Texas Emp. Ins. Ass'n, Intervenor v. Wiedemann Machine Co.*, 280 F.2d 380, 382 (3d Cir.1960); 10 James Wm. Moore & Helen I. Bendix, Moore's Federal Practice § 407.05 (2d ed.1994). This was the rule at common law also. *Steele, Texas Emp. Ins. Ass'n, Intervenor v. Wiedemann Mach. Co.*, 280 F.2d 380, 382 (3d Cir.1960).

But does not follow that because Rule 407 does not exclude the evidence it is automatically admissible. "Any evidence not excluded by Rule 407, of course, must still be relevant [under Rule 401] and its probative value must under Rule 403 outweigh any dangers associated with its admission." *Dixon*, 754 F.2d at 583. *See also* 2 Jack B. Weinstein, et al., Weinstein's Evidence § 407[01] at 407-11 (1992). The First Circuit made the point in *Raymond Corp.*:

43

This does not necessarily mean, however, that the evidence must be admitted. As discussed supra, evidence may be excluded under Fed.R.Evid. 403 if its probative value is outweighed by the unfair prejudice that could result. Rule 403 may be used to exclude evidence of subsequent third party actions which are felt to bear only marginally on the question of whether a product was unreasonably dangerous at the time of manufacture. Grenada Steel, 695 F.2d at 889 (Evidence of subsequent nonparty repairs was properly excluded under 403 because it "lacked probative value and injected the dangers of confusion and misleading the jury."); Gauthier v. AMF, Inc., 805 F.2d 337, 338 (9th Cir.), amending, 788 F.2d 634 (1986) (Evidence of nonparty manufacturer's subsequent design changes should have been excluded under 403 as irrelevant.); Koonce, 798 F.2d at 720 (Memo written by nonparty to suit regarding safety measures taken in response to accident could properly have been excluded as prejudicial or misleading.).

938 F.2d at 1524 -1525. (Parenthesis in original). [14]

At the oral argument on the motion, the plaintiff conceded the point, but insisted the fact that the plaintiff's employer, CIBA Vision, took it upon itself to modify the latch "is relevant to the issue of feasibility," and would tend to show that the defendant's original design was "unreasonably dangerous and not fit for its intended use." (Response at 3-4). But as the defendant's reply brief concedes – and that concession is binding on the defendant – "feasibility is not an issue in this case and never has been. Universal has never taken the position that the changes made by CIBA were not feasible." (Reply at 3). Where feasibility of precautionary measures is not controverted, evidence of subsequent remediation is irrelevant for that purpose and thus inadmissible. *See* Rule 402;

[14] *See also Bowling v. Scott County*, 2006 WL 2336333, 6 (E.D.Tenn. 2006)("... the plaintiff's counsel stated at the hearing that he seeks to admit evidence of subsequent remedial measures in order to show that the defendants did not act reasonably under the circumstances. The Court finds that the subsequent remedial measures taken by Attentus are only marginally relevant to the issue of whether the defendants were reasonable in maintaining the dock in the manner they did, and that the marginal relevance that this evidence might have is substantially outweighed by the danger of unfair prejudice to the defendants. *See* Fed.R.Evid. 403. Accordingly, the evidence of subsequent remedial measures will not be admitted on this basis.").

*Flaminio v. Honda Motor Co., Ltd.*, 733 F.2d 463, 468 (7th Cir.1984)(Posner, J.); *Everts v. Altec Industries*, 159 Fed. Appx. 284 (2d Cir. 2005).

This does not, however, make the evidence irrelevant for all other purposes, for evidence may be admissible for one purpose even though inadmissible for others. *See* Rule 105. *Cf. Geldon*, 414 F.3d 817. The question is whether the modifications by CIBA Vision -- whether pre or post injury – are relevant to proving that the defendant was at fault, the other purpose for which the plaintiff's supplemental brief states that the evidence will be offered. The answer to that question depends on whether under Rule 401,CIBA Vision's pre and/or post-accident modifications to the latch tend to make it more probable that the machine was negligently designed or unreasonably safe when it left the defendant's control. (Reply at 4).

And so, the question of admissibility is governed not by Rule 407, but by Rules 401 and 403. *See Pau v. Yosemite Park and Curry Co.*, 928 F.2d 880, 888 (9th Cir.1991); 2 Jack B. Weinstein, et al., Weinstein's Evidence § 407[01] at 407-11 (1992).[15] It seems obvious that, standing alone, evidence that a third party prior to an event decided to make changes to a product is irrelevant, and the fact that a pre-accident change was made by a third party, without more, should be excluded. The decision may have been made for any number of reasons unconnected with the perceived safety of the product.

Here, however, there presumably will be testimony that the change was made because the machine was deemed unsafe – both before and after the accident – thereby making the reason for the

---

[15] The Advisory Committee Notes to Rule 407 make clear that the Rule's first objective is to avoid unfairly prejudicing the defendant, which it was thought would occur because jurors could too readily equate subsequent design modifications with admissions of a prior defective design. That objective traces its lineage to the common law's long standing prohibition against the receipt of post-accident repairs. *Columbia & P. S. R. Co. v. Hawthorne*, 144 U.S. 202, 208 (1892).

change relevant. *Diehl*, 360 F.3d at 432 ("we find no dispute in the record that the IA design was done in direct response to Mr. Diehl's accident and for the sole purpose of preventing such accidents.... because the purpose of the redesign was not contested, there was no danger that the jury would discount other plausible reasons for the redesign."). Of course, on that point, the plaintiff's proof must satisfy Rules 702 and 703. If such testimony is admitted, testimony about the change itself simply completes the picture and ought to be received. If there is no such testimony or it is excluded, then the pre-accident modification is irrelevant and should be excluded under Rule 401. To the extent that it has marginal relevance, the evidence ought to be excluded under Rule 403.

The same analysis should govern CIBA Vision's post-accident modifications to the machine. Standing alone, the evidence should not be admitted. If, however, CIBA Vision personnel are allowed to testify under Rules 702 and 703 that the latch was inherently dangerous as designed, testimony that they went ahead and completed the modification to the machinery simply rounds out the story and should be received. There are a number of cases that hold that Rule 403 requires exclusion of pre and post-accident modifications to a product by a third party because it will distract the jury from the relevant time frame for its inquiry, i.e., whether the product was defective at the time of manufacture and sale. *Raymond*, 938 F.2d at 1522-1523. This is exactly the point that is made by Ms. Thakore in seeking to exclude CIBA Vision's supposed post-accident changes to its safety procedures. The question in this case is not whether Universal made a decision to redesign the latch, but whether in fact the latch was negligently designed by Universal. CIBA Vision's modifications, standing alone, are gravid with the potential to mislead and confuse the jury.

But there are cases that hold that post-accident modifications to a product by a third party *are admissible*. For example, in *Espeaignnette*, the First Circuit reversed the decision of the District

Court in excluding such evidence. The court found the evidence relevant because the plaintiff's employer's design and installation of a physical guard showed the feasibility of the modification at the time the product was manufactured. "Moreover this evidence bears directly on whether the edger was defectively designed. It allows the jury to compare the utility and risk of the edger as actively designed (without the guard) with the utility and risk of the alternate design (with the guard)." 43 F.3d at 6. Finally, the excluded evidence would have rebutted the testimony of the defendant's experts that a physical guard inhibited the operation of the equipment. *Id.* at 7. Since the excluded evidence was "crucial to the [plaintiffs'] case," it could not have been unfairly prejudicial. In the instant case, feasibility is not contested, nor is it disputed that the machine would not work as efficiently with the CIBA redesigned latch as it did with the original latch.

In *Diehl*, the Third Circuit held that exclusion of evidence of post-accident modifications by the plaintiff's employer to a road widener machine that injured the plaintiff was error requiring reversal. The court acknowledged that pre and post accident modification may be made for a number of different reasons and thus the modifications themselves are irrelevant. 360 F.3d at 432. Admission of the evidence would do no more than invite speculation by the jury and invites the jury to speculate. However, as in *Espeaignnette*, neither feasibility nor the reasons for the design change were disputed. As the court noted, the design change was in direct response to plaintiff's accident and for the sole purpose of preventing such accidents.

The Court of Appeals found no support for the District Judge's concerns that the redesign of the machine by the employer would confuse or mislead the jury. The evidence was probative of whether the road widener lacked a feature reasonably necessary to make the machine safe for its intended purpose. *Id.* at 432. The Court noted that a limiting instruction to the jury could have

alleviated any prejudice, but none was requested. *Id.* at 433, n.4. The court stressed that evidence

that the owner of the road widener had redesigned the machine tended to rebut the defendant's

expert's testimony that the proposed alternative design was not any safer than the defendant's original

design. *See also TLT-Babcock, Inc.,* 33 F.3d at 400, n.7 (evidence of a revised shaft design in a

defective ventilation system by a third party was relevant to the issue of causation because it showed

that the redesigned shaft withstood the loads placed upon them while the original shafts continued

to break even at reduced belt tensions).

These cases teach that there is no *per se* rule of exclusion of evidence of post-accident

remediation by a plaintiff's employer or other third party who is not a defendant in the case. Evidence

of CIBA Vision's design change, *standing alone,* should be excluded under Rule 403. Without

explanation, the fact of the change has no meaning and is certainly potentially distracting to the jury.

The mere fact of a design change will distract the jury from the real inquiry which is whether the

Universal design was negligent. It is not whether CIBA's was better.[16] *See Russell v. Page Aircraft*

*Maintenance, Inc.,* 455 F.2d 188, 191-92 (5th Cir.1972)(the relevance of subsequent remedial

measures of non-party was too "tenuous" and the possibility of prejudice to the defendant was "quite

great" when the plaintiff sought to admit evidence solely to show that the defendant's conduct was

not reasonable and safe under the circumstances).

What the Fifth Circuit said in *Grenada Steel Industries, Inc.* is important :

> The real question is whether the product or its design was defective at the time the
> product was sold. ... The jury's attention should be directed to whether the product was

---

[16] Of course, if the design modification had been made on the machine that injured Ms. Thakore, and it occurred prior to the accident, the defendant, if it chose, could argue that the modification, itself, caused the accident. But that is not what occurred here, and no modifications were made to the allegedly malfunctioning machine.

reasonably safe at the time it was manufactured. In this case, for example, there was ample expert testimony concerning that very point. The introduction of evidence about subsequent changes in the product or its design threatens to confuse the jury by diverting its attention from whether the product was defective at the relevant time to what was done later....(addressing only product design). Interpreted to require the evidence to focus on the time when the product was sold, Rule 407 would conform to the policy expressed in Rule 403, the exclusion of relevant information if its probative value is substantially outweighed by the danger of confusion. ...

\* \* \*

Nevertheless, we think the district court's exclusion of this evidence was proper because it lacked sufficient probative value and injected the dangers of confusion and misleading the jury. In Ward v. Hobart Manufacturing Co., 450 F.2d 1176 (5th Cir.1971), a Mississippi diversity-based negligent design case, we held that it was error for a district court to consider design changes developed after the manufacture of the product in question. Such repairs were simply irrelevant to the reasonableness of the design at the time of manufacture. Alternative designs may indicate that the product was unreasonably dangerous, ... but only if they were available at the time of manufacture. We fail to see how an alternative design, developed by another person years after the product in question was manufactured, is relevant to whether the product was reasonably safe at the time it was made. Therefore, the district court properly excluded evidence of Rego's alternative design in the absence of an issue on which that evidence would have had sufficient probative value to outweigh its unfair prejudicial effect.

695 F.2d at 888-889. *See also Keller v. United States*, 38 F.3d 16, 31 (1st Cir.1994)("[a]t best, subsequent remedial measures are considered marginally probative of prior negligence.").

If all that were involved was evidence that CIBA Vision had redesigned the latch, the evidence should be excluded under Rule 403. However, it appears that there will be far more than this. The plaintiff has represented that it will introduce testimony of CIBA Vision witnesses, some of whom, it says, have been designated as expert witnesses. If their testimony is admissible under Rule 702, as the plaintiff insists it will be, and if the other Federal Rules of Evidence are satisfied, the witnesses will be opining on the safety of the initial design by Universal. The jury will be able to assess the witness' testimony. It is in that informative context that they will learn of the design change and the

49

testimony will not pose the dangers perceived by *Grenada* and other cases. That is, they will not be asked to infer from the fact of a design change that the defendant's design must have been negligent and that the machine must have been inherently unsafe at the time of its manufacture.

If, however, the CIBA witnesses are not qualified as expert witnesses, they should not be allowed to testify about the design change, for the reasons expressed in *Grenada*. For, in that event, the jury will be asked to infer that the original design was negligent and unsafe simply because people who the plaintiff has conceded were not experts in the design of the latch concluded that a change should be made. In that context, the fact of the change is not only relevant and/or confusing, but would effectively allow non-experts to be opining – albeit in an indirect way – on the safety of the defendant's original design when they could not directly so testify because they could not be qualified as experts under Rule 702. Rule 403 simply does not allow this sort of oblique evasion of Rule 702.

The response to the motion to bar also says that "testimony of factual observations by CIBA Vision personnel, who took part in the process modifying the latch mechanism" should be admitted. (Response at 2). The response, however, does not explain what the testimony will consist of. The admissibility of this aspect of the subsequent remediation evidence suffers the same fate as the evidence regarding the modification of the latch mechanism, itself. So too the evidence of the documented findings and conclusions reached by CIBA Vision as a result of the modifications. If evidence of the modifications are inadmissible, this evidence must be excluded as well. Further, in order for the conclusions of CIBA Vision personnel to be admissible, it would seem that they would have to be qualified as experts – unless they were simply going to state factual conclusions of things they observed. But those factual observations may well only be relevant if in fact the evidence of the modification is admitted. For example, suppose the plaintiff seeks to introduce testimony by CIBA

Vision that one of its employees observed the redesigned latch function flawlessly in a test involving 5,000 operations of the machine. If the design modification is excluded, the testimony about the flawless operation of the new latch must be as well.

In short, the motion to exclude evidence of pre and post accident design changes by CIBA Vision is denied. This denial, however, is predicated on the assumption that there will be admissible expert testimony by CIBA Vision witnesses. If there is no such testimony, evidence of the design modification and the other species of related testimony by CIBA Vision employees referred to in the Response to the motion to bar, should be excluded. *See Grenada, supra.*

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE:9/24/09