KH/#505878

2345-54

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RITA THAKORE and VATSAL THAKORE, | )<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No. 05 C 5262<br>) |
| UNIVERSAL MACHINE CO. OF POTTSTOWN, INC., | ) Judge Gettleman<br>)<br>) |
| Defendant. | )<br>) |

## DEFENDANT'S RENEWED
## MOTION FOR JUDGMENT AS A MATTER OF LAW

NOW COMES Defendant, Universal Machine Company of Pottstown, Inc., ("Universal"), by and through its attorneys, Tressler LLP, pursuant to Federal Rule of Civil Procedure 50(a), hereby submits its Renewed Motion for Judgment as a Matter of Law.

## I. INTRODUCTION

On March 1, 2004, Plaintiff was allegedly injured by a work-related accident while at the CIBA plant in Des Plaines, Illinois. The allegations sound in negligence and strict liability alleging that Universal designed, manufactured and installed the heat seal press, which is alleged to have injured Plaintiff's hand. In essence, Plaintiff alleges that a spring-loaded latch failed to catch and hold the platen, which descended onto Plaintiff's hand.

The jury has returned a verdict in Plaintiff's favor, but the Court reserved ruling on Defendant's motion for judgment as a matter of law. Under Rule 50(a)(1), there was no sufficient evidentiary basis for a reasonable jury to find for Plaintiff on any and all of the claims raised in the Complaint. Plaintiff failed to present sufficient evidence from which a reasonable jury could find on her behalf on any of her claims. As such, the instant motion should be granted and judgment should be entered as a matter of law on behalf of Defendant.

II. **FACTS**

The Universal machines were designed so that a platen of a couple of hundred pounds and over 400 degrees would come down on an array of contact lenses on a conveyor line. The heat and pressure from the platen would seal the package of contact lenses. Glass barrier guards surrounded the operating parts of the machine.

The first system was built based upon existing systems that CIBA already owned and that were previously manufactured by Luciano. CIBA gave Universal the Luciano design drawings. The Luciano system did not have any device to hold up the platen. CIBA provided Universal with specifications for the Des Plaines heat seal presses.

For the subject heat seal presses in Des Plaines, Universal contracted with CIBA to manufacture and install the heat seal press at issue as part of a larger packaging conveyor system and Universal was to be paid for its work. It did not call for Universal to be involved in maintenance at all. Universal had no contractual duty to CIBA or Plaintiff post-installation to perform any maintenance, training or any other responsibilities with respect to the presses.

**Intended Function For The Latch**

CIBA requested that a latch be added to the design of the machines because during weekends or changes in shifts in Indonesia the upper platen would drift down and thereby ruin the product. CIBA requested the latch for production purposes, not personal safety purposes. No one testified that the latch was contracted as a personal safety purpose. Pursuant to CIBA's instructions, Universal thus did not design the latch to be a safety latch, but rather it was put in place as a production device, as it was not contemplated that CIBA employees would be putting their hands inside the press. The latch was designed to keep the platen from coming down on the shuttle plate and causing interruption to the manufacturing process. To CIBA's corporate understanding, the latch was not designed to hold the press during cleaning. The latch was

2

basically a means for ensuring more process control – if the platen would descend without being caught it would melt the plastic arrays. It was thus only intended for production purposes.

As far as how the latch was activated and moves in position, when the machine is running, air pressure was applied to the machine and held the latch open. When the air pressure was removed from the machine in the event of an e-stop, the spring in the cylinder, plus the spring on the front of the cylinder caused the latch to extend, engaging the latch to the platen.

**Heat Seal Press Testing**

Pre-installation testing was done on the entire system, including the latch. The machines underwent tests such as the Factory Acceptance Test, Site Acceptance Test, and validation protocols. These were all done by CIBA. Factory Acceptance Testing occurred over several days at the Universal plant with CIBA personnel running the machine through all kinds of protocols. During that testing the latch held the platen for a period of time and never gave way. The Site Acceptance Test was done by CIBA personnel again running the machine through all kinds of tests. CIBA also did validation testing on the subject machines.

One of the things that CIBA did when testing the Universal machines was to look for safety issues. The machines met CIBA's engineer's safety requirements. In CIBA's opinion the Universal heat seal presses met CIBA's specifications. The machine worked for years without incident.

**Alterations**

The photographs of the latch taken after the accident show that the latch was not in the same condition as when it left Universal. There was a spring missing. The absence of the external spring increased the likelihood of the latch system not holding the platen. There were also grooves on the latch in the photographs that were not there when Universal built the machine.

3

CIBA altered the use of the latch from purely a production function to also include personal safety. The original latch had one spring in the cylinder and one outside the cylinder. The springs are to push the latch out into position.

Plaintiff's expert has no criticism of the emergency stop mode on the press in terms of its design or manufacture. Plaintiff's expert's opinion is that this is a design case, not a manufacture case. Further, Plaintiff's expert's opinion basis his entire theory of liability on the notion that the lip of the latch was covered in oil and/or moisture. However, Plaintiff's expert admitted in open court that he did not observe the condition, but rather speculated that there was oil and/or moisture on the lip at the time of the accident.

### III. **LEGAL STANDARD**

Under Rule 50(a), a court should render judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a); *see also Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2109 (2000).

A "mere scintilla" of evidence is not enough to prevent judgment as a matter of law. *Garrett v. Barnes*, 961 F.2d 629, 632 (7th Cir. 1992); *James v. Milwaukee County et al.*, 956 F.2d 696, 698 (7th Cir. 1992). A motion for judgment as a matter of law is properly granted against a party who relies only on speculation and conjecture. *Garrett*, 961 F.2d at 632 (*quoting McClure v. Cywinski,* 686 F.2d 541, 544 (7th Cir. 1982)). Judgment should be entered under Rule 50(a) where the evidence "is so one-sided that one party must prevail as a matter of law." *Klunk v. County of St. Joseph*, 170 F.3d 772, 775 (7th Cir. 1999).

4

A. **The Plaintiff Failed To Prove Her Case For Strict Liability**

   1. **There Is No Evidence That The Press Was Defective When It Left Universal's Control**

It is a plaintiff asserting a strict liability claim's burden to produce evidence that the product was defective or else judgment for the defendant is proper. *Sorce v Naperville Jeep Eagle, Inc.*, 309 Ill.App.3d 313, 722 N.E.2d 227 (2nd Dist. 1999) (summary judgment affirmed where there was insufficient evidence of an unreasonably dangerous condition that existed in a vehicle at the time it left the manufacturer's control that could be causally connected to the injuries). An inference of a defective product may not be drawn from the mere fact that an injury occurred. *Chase v. Kawasaki Motors Corp.*, 140 F.Supp.2d 1280, 1286 (M.D. Ala. 2001); *Loos v. American Energy Savers, Inc.*, 168 Ill.App.3d 558, 522 N.E.2d 841, 845 (4th Dist. 1988).

Here there is no evidence that the press was defective when it left Universal's control. The press was approved by CIBA's engineers after rigorous testing at Universal, rigorous testing at CIBA and CIBA Quality Control testing. The press worked for years without any incident. The machine was encased in guarding. As to the latch that is the focal point of Plaintiff's claims, Plaintiff's expert reviewed what was left of the latch system (spring missing) in 2006, two years post accident. Further, Plaintiff has not established that the grooves that appear in the latch currently were done by Universal but rather the opposite has been proven by Plaintiff. Plaintiff has not established chain of custody or that it is in the exact same condition as at the time of the accident. Plaintiff's expert testified that central to his case is the issue of friction. However, he admitted that he was speculating as to whether there was dirt or moisture and the condition of the latch currently may not be the same as it was at the time of the accident. As there is no evidence of a defect at the time the press left Universal's control, judgment for Universal is proper.

5

It is essential under strict liability that a plaintiff prove that the unreasonably dangerous condition existed at the time the product left the defendant's control. Alteration is not a defense that must be established by the defendant, but rather a necessary element of the plaintiff's cause of action. *Korando v. Uniroyal Goodrich Tire Co.*, 159 Ill.2d 335, 637 N.E.2d 1020 (1994). Thus, when a product has been changed after leaving the defendant's control, the defendant is relieved from liability as there is an absence of proximate causation. *Id.* The alteration of the product is a superseding cause of the injury, thereby relieving the defendant of liability. *Augenstine v. Dico Co., Inc.*, 135 Ill.App.3d 273, 481 N.E.2d 1225 (1st Dist. 1985).

Sometime after the installation of the press by Universal, CIBA altered the latch system without Universal's knowledge or involvement. There were physical alterations to the latch system that occurred between the time the press left Universal's control and the accident. These alterations included the following: (1) removal of an activation spring affecting how fast the latch would spring into place; (2) possible lubrication reducing the coefficient of friction holding the platen on the latch; and (3) the latch was removed and grooves were cut in it. Plaintiff's expert further opined that the missing spring and the lubrication negatively affected the holding ability of the latch and caused the platen to descend.

CIBA also altered the use of the latch from purely a production function to also include personal safety. Plaintiff's expert characterize the subject latch as a "safety latch". However, the latch was never intended to be a safety latch, but rather was merely a production device. Plaintiff bears the burden to show that the press was not altered and Plaintiff has failed to meet this burden.

### 2. Universal Had No Duty To Warn Where It Was Unaware Of, And Had No Control Over, CIBA'S Use

Duty to warn cases are predicated upon unequal knowledge. Whether a duty to warn exists is a question of law. *Genaust v. Illinois Power Co.*, 62 Ill.2d 456, 343 N.E.2d 465 (1976). A duty to warn exists only if there is unequal knowledge between plaintiff and defendant, with the latter being aware of a danger and the former not. The Restatement (Third) of Torts: Product Liability Section 2(c) (1998) provides for liability for inadequate warnings when the foreseeable risks of harm could have been avoided through reasonable warnings. The element of unequal knowledge requires an analysis of the manufacturer's knowledge of a particular risk. A manufacturer is not liable for the failure to warn of a danger that would be impossible for the manufacturer to know. *Woodill v. Parke Davis & Co.*, 79 Ill.2d 26, 402 N.E.2d 194 (1980) (affirming dismissal of strict liability claim when the drug manufacturer had no knowledge that use of its drug by pregnant women could result in fatal brain damage).

In this case, CIBA's engineers approved the press after rigorous testing at the Universal site, rigorous testing at CIBA and Quality control testing. It worked for years without any incident. The machine was encased in guarding. CIBA and Universal agreed that the latch system was only to be a production function, not a safety device. There is no evidence that Universal was aware of the change in use by CIBA. Universal had no control over CIBA's production, maintenance and other procedures. Given these unrefuted facts, Plaintiff has not met her burden to prove any failure to warn.

### B. Plaintiff Has Failed to Meet Her Burden On Her Negligence Claim

#### 1. No evidence of defect when it left Universal control

As stated above, there were numerous alterations to the press, and the press was misused. It is undisputed that Universal had no knowledge of these alterations or misuse. Universal had

7

neither notice nor control over CIBA's production, maintenance or other procedures. Indeed, despite the fact that it was planning to change the latch involved in the accident prior to the accident, CIBA never told Universal of any problems with the press or the latch.

Here there also is no evidence that the accident was foreseeable to Universal. The testimony is that CIBA's intended use of the latch that it specified and expressed to Universal was not for safety purposes, but rather was meant to serve merely a production function. Injury resulting from an internal change in the use of a guarded machine is not a foreseeable injury, especially here where Universal was not advised of the change. There was no likelihood of injury here as there was no indication that the operator would be changing the use and would open the guard doors and stick their hands under the platen. The burden of guarding against such a harm in the absence of full information would be overwhelming. Universal's burden of guarding against such a harm would be high as it had no access or control over CIBA's internal methods and procedures and was not consulted about any changes. Given these circumstances it would be unreasonable to hold Universal liable to Plaintiff where there was no consultation and Universal had no control over the manner in which CIBA decided to use the press. This is especially the case here where Universal did not have any knowledge about this change and CIBA had superior knowledge. Universal had no duty of care to Plaintiff under these circumstances.

2. **Even If Universal Had A Duty Of Care, Any Duty Of Care Was Satisfied**

As to whether Universal had satisfied any duty it had, that issue must be analyzed by construing the machine pursuant to CIBA's intended use. A product is unreasonably dangerous where it fails to perform in the manner reasonably expected in light of its nature and intended function. *Mason v. Ashland Exploration, Inc.*, 965 F.2d 1421, 1427 (7th Cir. 1992); *Sanchez v. Bock Laundry Mach. Co.*, 107 Ill.App.3d 1024, 438 N.E.2d 569, 572 (1st Dist. 1982).

8

The subject press was tested extensively and accepted by CIBA. It met CIBA's safety requirements and its intended function, including the subject latch. Under these circumstances, Universal satisfied any duty of care it may have had. *See Clark v. Penn Versatile Van*, 197 Ill.App.3d 1, 554 N.E.2d 643 (1st Dist. 1990) (manufacturer not liable for injuries to a passenger cause by the lack of a passenger seat or a handhold in a cargo "step van" since manufacturer only had reason to believe that the intended function of step van was to transport one person- the driver).

Similar to a strict liability claim, in a negligence claim alteration is not a defense that must be established by the manufacturer, but rather is a necessary element of the plaintiff's cause of action. *Korando,* 637 N.E.2d at 1020. Thus, when a product has been changed after leaving the defendant's control, the defendant is relieved from liability as there is an absence of proximate causation. *Id.* The alteration of the product is a superseding cause of the injury, thereby relieving the manufacturer of liability for negligence. *Augenstine,* 481 N.E.2d at 1225.

The undisputed evidence is that the subject press was built to CIBA's specifications, was tested extensively by CIBA and put to regular use without incident for two years before the accident. Universal's contractual obligations ceased after it installed the press. Universal was not involved with maintenance and had no involvement with the press after installation. CIBA's modifications to the heat seal press latch system obviates any potential liability to Universal.

### 3. CIBA And Plaintiff's Misuse Prohibit Liability

Misuse of a product bars a plaintiff from recovery. *Kudelka,* 541 F.2d at 656. Misuse of a product is using it for a purpose neither intended nor reasonably foreseeable by the defendant based upon an objective standard. *Varilek,* 558 N.E.2d at 365. A contractor is not under a duty in strict liability to design a product that is totally incapable of injuring those who foreseeably come in contact with the product. *Hunt,* 394 N.E.2d at 372. A contractor is not an insurer of all

9

foreseeable accidents that involve its product. *Id.* Virtually any product is capable of producing injury when put to certain uses or misuses. *Id.* Consequently a contractor need not "fool proof" a machine. *Id.*

The subject latch was safe for its one intended use (production), but at some later point its use was changed (to include personal safety). Similar to the analysis with respect to Plaintiff's strict liability claims, CIBA's change of use from production function to personal safety latch after installation and without notice to Universal exculpates Universal from any liability for negligence.

## IV. CONCLUSION

WHEREFORE, Defendant, Universal Machine Company of Pottstown, Inc. respectfully requests that this Court grant its motion for judgment as a matter of law and against Plaintiff Rita Thakore and for any other relief this Court deems just and appropriate.

UNIVERSAL MACHINE CO. OF POTTSTOWN, INC.

By: /s/James K. Borcia
One of Its Attorneys

James K. Borcia
John M. O'Driscoll
Tressler LLP
233 S. Wacker Drive, 22nd Floor
Chicago, IL 60606-6308
(312) 627-4000